[No. H008672. Sixth Dist. Sept. 3, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
LAWRENCE PERCIFULL et al., Defendants and Respondents.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Appellant.

Dawson, Passafuime & Bowden and Gerald D. Bowden for Defendants and Respondents.

OPINION

**BAMATTRE-MANOUKIAN, J.**—In *Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667 [206 Cal.Rptr. 785], the First District Court of Appeal held that proceedings on an information charging felony child abuse and endangerment (Pen. Code, § 273a, subd. (1)) were barred under the doctrine of collateral estoppel by a juvenile court's determination, in dependency proceedings (Welf. & Inst. Code, § 300) arising out of the same facts, that child abuse had not been proved. The Court of Appeal found all of the technical elements of collateral estoppel; it rejected, without extended discussion, the People's contention that collateral estoppel should not have applied because the *purposes* of the two proceedings were different.

Six years later, in *Lucido* v. *Superior Court* (1990) 51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R. 5th 995], the Supreme Court concluded that a prosecution for indecent exposure was *not* barred under the collateral estoppel doctrine by a determination, at an earlier probation revocation hearing, that the People had not produced clear and convincing

evidence to show that the defendant had committed indecent exposure. The Supreme Court acknowledged that the threshold requirements of collateral estoppel arguably had been met but concluded that as a matter of public policy the doctrine should not apply because to do so "would unduly expand the designated function of the revocation hearing and undermine the public interest in determining criminal guilt and innocence at criminal trials." (51 Cal.3d at p. 352.)

Before us is a situation procedurally similar to that in *Lockwood*: A juvenile court concluded that the state had not proved allegations, in a dependency petition, that parents had injured their child or allowed him to be injured. The parents, citing *Lockwood*, then moved to dismiss felony child abuse and endangerment charges against them arising out of the same facts. The superior court granted the parents' motion and dismissed the criminal charges. As in *Lockwood* and *Lucido*, the threshold requirements of collateral estoppel appear to have been established. Upon the People's appeal we must decide whether policy considerations the Supreme Court stressed in *Lucido* require a result different from that the First District reached in *Lockwood*.

We shall conclude, in light of *Lucido*, that collateral estoppel should not have been applied in this case and therefore that the order of dismissal must be reversed.

In February 1991 the mother brought her son, a two-year-old boy, to his regular day-care center with two small but apparently severe circular burns on his left forearm. The day-care operator promptly made a report to police, as required by the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.). The child was taken into protective custody. Investigation led to a juvenile dependency petition under Welfare and Institutions Code section 300 as well as to felony charges against both parents under subdivision (1) of Penal Code section 273a. The parents consistently denied having burned the child, and implicitly asserted that they had not been remiss in caring for him, but they could not say with assurance how he had been burned: Their first theory was that he had come in contact with a hot ash tray at an appliance store; they later suggested that he had, instead, been burned on a hot water dispenser at an insurance office; the father acknowledged they had also discussed the possibility the child had accidentally burned himself on one or another of several appliances in their home. Apart from the burns there was no evidence the child had ever been mistreated or neglected, and it appeared that the child remained happy with and affectionate toward his parents. The dependency petition alleged that the parents had "non-accidentally" inflicted serious physical harm upon the child (Welf. & Inst. Code, § 300, subd. (a)) and that the parents had allowed the child to suffer such harm by failing to protect him adequately (*id.* subd. (b)).

The felony complaint went to a preliminary examination which lasted one and one half days and at which the prosecutor, McKay-McCoy, called three witnesses: A director from the day-care center, a burn specialist from the county medical center, and the investigating police officer. The parents called a representative of the insurance office. Neither parent testified. The parents were held to answer.

A contested jurisdictional hearing on the dependency petition began in the juvenile court one week later. The hearing required all or parts of five court days. The case for dependency was presented by a deputy county counsel; the child was represented by a deputy district attorney, Masterson; each parent had an attorney. A total of 10 witnesses testified, some more than once: County counsel called the county burn specialist, the investigating officer, the mother, a pediatrician to whom the mother took the child after the day-care center had made its report, and a pediatrician employed by the county. The mother called an independent burn specialist, a coworker of hers with whom she had discussed the burns before she took the child to the day-care center, and her stepmother who had cared for the child after he was burned but before he was taken to the day-care center. The father testified and also called the assigned county dependency investigator. The hearing was conducted with some formality, and all parties were given full opportunities to examine and cross-examine, to make and argue objections and other legal points, and to sum up at the close of the evidence.

While the dependency hearing was in progress the People filed an information that charged the parents with a felony violation of subdivision (1) of Penal Code section 273a, in that they, "under circumstances or conditions likely to produce great bodily harm and death, did wilfully cause and permit [the child] to suffer and did inflict on said child unjustifiable physical pain and mental suffering, and while having the care and custody of said child, did wilfully cause and permit the person and health of said child to be injured, and did willfully cause and permit said child to be placed in such situation that its person and health were endangered." The information added an allegation that the parents had personally and intentionally inflicted great bodily injury on the child in the commission of the offenses alleged. (Pen. Code, §§ 12022.7, 1203, subd. (e)(3).)

When the dependency issues were submitted, on the fifth hearing day, the juvenile court ruled from the bench that in its view both parents had told the truth and the child was not at risk, and that "the petition is not sustained, not on either ground. The child is free to go home."

The parents then moved to dismiss the criminal charges on collateral estoppel grounds. The superior court granted their motion, and this appeal followed.

■ We accept for purposes of analysis the parents' assertion that all of the threshold requirements of a collateral estoppel, as enumerated in *Lucido*, were met in this case. We nevertheless agree with the People that this case is governed by *Lucido*'s repeated emphasis on what it at one point characterized as "the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence as to new crimes." (51 Cal.3d at p. 351.) The dependency proceeding was intended to meet two vitally important social needs: protection of the child and preservation, so far as possible, of the integrity of the family. But that proceeding did not and could not reach the need, paramount in any criminal proceeding, to vindicate society's insistence that every citizen obey the penal laws. To permit the issues tendered by the felony charges to be resolved on the basis of a determination that the child did not come within the jurisdictional provisions of the dependency statute would be to frustrate the right of all the people of California to insist on enforcement of their penal laws through the medium of the criminal trial process.

In *Lucido* the first proceeding was a probation revocation hearing, but the Supreme Court's discussion is nevertheless dispositive in this case.

The Supreme Court enumerated and then discussed in detail the three policy considerations uniformly deemed fundamental to collateral estoppel: That the integrity of the judicial system should not be threatened by the possibility of inconsistent results; that economy of judicial resources should be achieved by giving effect to the first resolution of litigated issues; and that the party who prevails as to particular issues at the first proceeding should not be subject to vexatious harassment through baseless and unjustified renewal of dispute as to those issues.

### 1. *Integrity of Judicial Determinations*

The Supreme Court pointed out that "[c]onsistency . . . is not the sole measure of the integrity of judicial decisions. We must also consider whether eliminating potential inconsistency (by displacing full determination of factual issues in criminal trials) would undermine public confidence in the judicial system. As has the majority of courts in other jurisdictions, we conclude it would." (*Lucido* v. *Superior Court, supra*, 51 Cal.3d at p. 347.) Because of the procedural context in which it found itself, the Supreme Court focused on cases in which the first proceeding was for revocation of probation. But we find the same considerations applicable where, as here, the first hearing is in a juvenile dependency proceeding. Here, as in the situation *Lucido* considered, the two proceedings serve different public interests and purposes (cf. *Ferraro* v. *Chadwick* (1990) 221 Cal.App.3d 86,

90-97 [270 Cal.Rptr. 379]), and these differing concerns may shape the People's pursuit of each.

Indeed, in one important respect the aims and tactics of the two proceedings in this case are in direct conflict: Under the Welfare and Institutions Code, counsel representing the public must bear in mind legislative admonitions that the Juvenile Court Law is broadly intended not only to protect the public and the child but also "to preserve and strengthen the minor's family ties whenever possible . . . ." (Welf. & Inst. Code, § 202, subd. (a)), and that the dependency provision in particular is intended to extend protection which "shall focus on the preservation of the family whenever possible." (*Id.* at § 300, subd. (j).) A successful prosecution for felony child abuse, on the other hand, may be expected to culminate in prison sentences for one or both parents and thus in the disruption, if not the destruction, of the family. Thus tactics devised by public counsel in the dependency proceeding, influenced by the need to preserve the family if possible, may not serve the public's interest in imposing legislatively specified punishment for child abuse. Whether the tension between these goals is in any sense undesirable is a judgment for the Legislature to make; so long as the conflict is legislatively ordained, the sound policies recognized in *Lucido* require that the criminal prosecution be permitted to proceed notwithstanding a finding of no jurisdiction in the dependency proceeding.

*Lucido* also pointed out that substantial differences in purpose between the earlier proceeding and the criminal action will suffice to justify the second proceeding and a risk of an inconsistent result: "Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes. [Citations.]" (51 Cal.3d at p. 349.) We deem the Supreme Court's concern as applicable to this case as it was in *Lucido*.

The result our analysis suggests is consistent with the Supreme Court's perception that it has applied collateral estoppel to preclude criminal trials "only when compelling public policy considerations outweighed the need for determinations of guilt and innocence to be made in the usual criminal trial setting." (51 Cal.3d at p. 349.) We conclude that in the situation before us there is no consideration so compelling as to outweigh the public's right to have the parents' criminal culpability separately and fully assessed in the criminal trial process, even if the result of that assessment may ultimately be, or be perceived to be, inconsistent with the conclusion the juvenile court reached.

### 2. *Judicial Economy*

In *Lucido* the Supreme Court concluded that considerations of judicial economy were outweighed by the factors it had discussed in connection with judicial integrity: "Whatever the efficiencies of applying collateral estoppel in this case, they pale before the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence as to new crimes." (51 Cal.3d at p. 351.) We reach the same conclusion in this case.

### 3. *Vexatious Litigation*

*Lucido* states that "[t]he essence of vexatiousness . . . is not mere repetition. Rather, it is harassment through baseless or unjustified litigation." (51 Cal.3d at p. 351.)

Our careful examination of the relatively extensive record developed at the dependency hearing persuades us that prosecution of the child abuse charges in this case could not rationally be regarded as either baseless or unjustified. In the exercise of sound prosecutorial discretion the district attorney could properly conclude that his or her duty to enforce the criminal laws required that the matter be brought to trial. We deem it particularly significant (as did the People's witnesses at the dependency hearing) that the burns were serious, the parents did not seek medical attention for the burns until after the day-care center notified them that it had made its report, and that the parents never did tender a wholly plausible explanation for burns which must have occurred while the child was in their custody.

We do not hold that the charges in this case, or in cases like this one, must invariably be brought to trial. We hold only that in these circumstances these charges should not have been wholly removed from the criminal trial process by the conclusion, as a matter of law, that prosecution was barred by collateral estoppel. One critically important element of the criminal trial process is the exercise of the district attorney's sound discretion as to whether prosecution is or is not warranted in any particular case. In the case before us we would trust the district attorney to exercise his or her discretion with wisdom and caution, taking into account not only the state of the evidence and the right of the people to enforcement of the penal laws, but also the order of the juvenile court, the current status of the reunited family more than a year and a half after the events described and the impact already made upon the parents by the anguish and expense of the dependency proceedings.

The order dismissing the felony charges is reversed, and the matter is remanded for such further proceedings upon the information as the district attorney, in his or her sound discretion, considers appropriate.

Cottle, Acting P. J., and O'Farrell, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied November 25, 1992. Mosk, J., was of the opinion that the petition should be granted.

---

*Judge of the Monterey Superior Court sitting under assignment by the Chairperson of the Judicial Council.