[No. A089641. First Dist., Div. Three. Mar. 30, 2001.]

In re DENNIS H. et al., Persons Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v.
WILLIS H., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I. B and part II.

**COUNSEL**

Jonathan D. Soglin, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard E. Winnie, County Counsel, and Anthony E. Scarr, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**PARRILLI, J.**—Willis H. appeals from juvenile court orders removing three children from his custody and denying reunification services. He maintains: (1) the district attorney's participation in the juvenile dependency proceedings was inappropriate and prejudicial, (2) his trial counsel rendered ineffective assistance, and (3) the court erred in denying reunification. For the reasons discussed below, we affirm the juvenile court's orders.

### BACKGROUND

Alameda County Social Services Agency (the Agency) filed a juvenile dependency petition alleging that 11-year-old Dennis, 7-year-old Jacob and 5-year-old Samantha came within the juvenile court's jurisdiction under Welfare and Institutions Code section 300, subdivisions (b) (failure to protect), (d) (sexual abuse) and (j) (abuse of sibling). The petition alleged the father, Willis, had committed various acts of physical abuse against his sons and, in the children's presence, their grandmother. It further alleged Willis had sexually molested his daughter, based on Samantha's statements

that her father had touched her "privates" in the bath and touched the inside of her bottom, making it hurt, and that she had rolled around naked with her father and had seen his penis. The previous fall, Samantha was sexually molested by an 11-year-old neighbor and her brother Jacob. Moreover, a recent medical exam of Samantha revealed a history of hymenal trauma and sexual assault. Finally, the petition noted that Willis was registered as a serious sex offender due to his prior molestation of another child, an older half sibling of these children.

The Agency received a report on March 25, 1999, alleging that Samantha had a broken leg, had not been attending school, and was sleeping in the same bed with her father. Shortly after this report, Willis was arrested for physical abuse of his elderly, wheelchair-bound mother. Police officers later interviewed the children and took them into protective custody, and the juvenile court ordered them detained. At the detention hearing, the juvenile court appointed separate counsel to represent the father and the children. The court also appointed the district attorney, at the request of the Agency, "to represent the interest of the state."

At the jurisdictional hearing, the court viewed videotaped interviews of the children and heard testimony from Willis, the children's maternal grandmother and two young women who lived in the same apartment with Willis and the children and slept in a dressing area adjacent to his bedroom. In a videotaped interview, Samantha said her father had touched her on the chest, vagina and bottom. She reported one incident in which her father touched her on the vagina, or the outside of her bottom, while the two were in bed. Jacob told the interviewer he slept on the floor and sometimes Willis hit him in the back of the head. Once his father hit his head into a light switch. Dennis reported that Willis spanked him on the bottom with a belt or his hand.

Willis denied all allegations of sexual abuse, claiming he had not bathed with Samantha since she was a baby and had only touched her vaginal area once, to clean a cut she suffered from a fall. He touched her bottom only once, he said, to push her away after she had scooted too close to him in the bed. He denied ever touching Samantha's chest except to poke or tickle her. Willis also denied most of the allegations of physical abuse, although he admitted he once punched Dennis "lightly," and once "inadvertently" hit Jacob's head against the wall and cracked a light switch cover. He denied choking Jacob or hitting any of the children with a belt.

The juvenile court found the allegations of the petition to be true. Based on findings that the father inflicted severe sexual abuse on his daughter and severe physical abuse on his sons, the court denied reunification services.

## DISCUSSION

### I. *Trial Counsel Did Not Render Ineffective Assistance.*

#### A. *Participation of the District Attorney.*

Willis contends the juvenile court committed reversible error by allowing the district attorney to participate in the dependency proceedings; however, as Willis acknowledges, he never raised this objection below. ■ "An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, p. 444.) "The most obvious types of implied waiver arise from failure to object to the ruling or proceeding." (*Id.* at § 390, p. 440.) ■ Although Willis waived his claim of error based on the district attorney's participation (see *In re Courtney S.* (1982) 130 Cal.App.3d 567, 574 [181 Cal.Rptr. 843] [objection to district attorney's representation of minor waived]), we address the merits of his argument that trial counsel rendered ineffective assistance by failing to raise the objection.[1]

To establish ineffective assistance of counsel in dependency proceedings, a parent "must demonstrate both that: (1) his appointed counsel failed to act in a manner expected of reasonably competent attorneys acting as diligent advocates; and that (2) this failure made a determinative difference in the outcome, rendering the proceedings fundamentally unfair in that it is reasonably probable that but for such failure, a determination more favorable for [the parent's] interests would have resulted." (*In re Diana G.* (1992) 10 Cal.App.4th 1468, 1479 [13 Cal.Rptr.2d 645]; see *People v. Pope, supra,* 23 Cal.3d 412, 424-425; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667-1668 [54 Cal.Rptr.2d 722].) In short, appellant has the burden of proving both that his attorney's representation was deficient and that this deficiency resulted in prejudice. (*People v. Pope, supra,* at p. 425.)

To prove deficient representation, Willis "must 'affirmatively show that the omissions of defense counsel involved a crucial issue, and that the

---

[1]In general, the proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus, not appeal. (*In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1253 [85 Cal.App.4th 1023c, 101 Cal.Rptr.2d 548]; *People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) However, an ineffective assistance claim may be reviewed on direct appeal where "there simply could be no satisfactory explanation" for trial counsel's action or inaction. (*People v. Pope, supra,* at p. 426.) Willis duly avails himself of this exception by observing that "there was absolutely no advantage" to be gained by allowing the district attorney, an adverse nonparty, to participate.

omissions cannot be explained on the basis of any knowledgeable choice of tactics.' [Citation.]" (*People v. Jackson* (1980) 28 Cal.3d 264, 289 [168 Cal.Rptr. 603, 618 P.2d 149].) ■ Willis contends any reasonably competent attorney would have objected to the participation of an adverse nonparty, i.e., the district attorney. Citing the general principle that the district attorney may not prosecute civil actions absent express authority from the Legislature (*Safer v. Superior Court* (1975) 15 Cal.3d 230, 236-238 [124 Cal.Rptr. 174, 540 P.2d 14]), he argues that no statute permits the district attorney to participate in dependency proceedings, as he did here, "to represent the interests of the state."

We agree with the father that no statute explicitly provides for the appearance of the district attorney in dependency proceedings as a representative of undefined "interests of the state." Welfare and Institutions Code section 317, subdivision (c) permits the juvenile court to appoint the district attorney as counsel for the child in such a proceeding, and section 318.5 provides that, where the parent has counsel, the court may appoint the district attorney to represent the petitioner.[2] Here, the children and the petitioner (the Agency) were already represented by counsel and continued to be so throughout the proceedings. The court allowed the district attorney to appear, at the request of the petitioner, to represent the undefined "interests of the state."

Respondent contends statutory authorization for the district attorney's participation may be found in Welfare and Institutions Code section 681, subdivision (b), which states: "Where the petition in a juvenile court proceeding alleges that a minor is a person described in subdivision (a), (b), or (d) of Section 300, and either of the parents . . . is charged in a pending criminal prosecution based upon unlawful acts committed against the minor, the prosecuting attorney shall, with the consent or at the request of the juvenile court judge, represent the minor in the interest of the state at the juvenile court proceeding. The terms and conditions of such representation shall be with the consent or approval of the judge of the juvenile court." Although we have found no case law construing this provision, it appears clear from the statute's language that it applies only when criminal charges have been brought (and thus are "pending") against the parent, and it authorizes only the district attorney's representation of the *minor*. The statute

---

[2]The predecessor to section 318.5 clearly authorized the district attorney's participation as a general matter. Welfare and Institutions Code section 351 (added by Stats. 1976, ch. 1068. § 9, p. 4770, renumbered and amended by Stats. 1986, ch. 1122, § 7, p. 3979) provided: "In a juvenile court hearing where the minor who is the subject of the hearing is represented by counsel, the district attorney shall, with the consent or at the request of the juvenile court judge, appear and participate in the hearing to assist in the ascertaining and presenting of the evidence. . . ."

is not directly applicable in the present case because it is undisputed that, at the time of the dependency hearings, no criminal charges had been filed against Willis relating to his treatment of the children. The Agency asks us to read section 681, subdivision (b) broadly to encompass ongoing criminal investigations as well as pending criminal charges, because otherwise prosecutors might rush to file charges before a thorough investigation. However, the Legislature is the proper forum for these policy arguments. (*Coors Brewing Co. v. Stroh* (2001) 86 Cal.App.4th 768, 780 [103 Cal.Rptr.2d 570].)

Nevertheless, the Agency stresses the importance to the district attorney of participating in this juvenile dependency proceeding. During April 1999, the month the Agency filed its petition, the father was arrested for both child abuse and elder abuse. A criminal investigation regarding Willis's alleged sexual abuse of his daughter continued at least into September 1999, well after the juvenile court determined it had jurisdiction. If he reasonably believed this investigation would lead to criminal prosecution of Willis, the district attorney may have wanted to participate in the dependency hearings to protect against a future invocation of collateral estoppel. In *Lockwood v. Superior Court* (1984) 160 Cal.App.3d 667, 671-672 [206 Cal.Rptr. 785], the court held that after a juvenile court has dismissed a dependency petition, principles of collateral estoppel may bar the prosecution of criminal charges against a parent based on the same conduct alleged in the petition. However, the Sixth Appellate District later disagreed with this holding based on intervening Supreme Court precedent. (*People v. Percifull* (1992) 9 Cal.App.4th 1457, 1459 [12 Cal.Rptr.2d 331].)[3] Finally, the Agency argues that even if Welfare and Institutions Code section 681, subdivision (b) does not expressly sanction the district attorney's participation in dependency proceedings, the appointment here was justified as a legitimate exercise of the juvenile court's power to control all aspects of dependency proceedings. (Welf. & Inst. Code, § 350, subd. (a).)

The source of the district attorney's power to participate in civil proceedings derives from, and is circumscribed by, statutes. (*Safer v. Superior Court*, *supra*, 15 Cal.3d at pp. 236-237.) "Our high court has held that the district attorney may not prosecute civil actions in the absence of specific legislative authorization. [Citations.]" (*In re Marriage of Brown* (1987) 189 Cal.App.3d 491, 495 [234 Cal.Rptr. 535].) As discussed, no statute authorizes the district

---

[3]In *Lucido v. Superior Court* (1990) 51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995], the Supreme Court concluded that the collateral estoppel doctrine did not bar a prosecution for indecent exposure despite a contrary determination at an earlier probation revocation hearing. The appellate court in *Percifull* considered the reasoning of *Lucido* equally applicable to prevent a collateral estoppel bar to prosecution following a juvenile dependency hearing. (*People v. Percifull*, *supra*, 9 Cal.App.4th at pp. 1459-1461.)

attorney's participation in a juvenile dependency hearing "to represent the interests of the state" where the minors are represented by counsel and county counsel appears on behalf of the social services agency.

In *Safer v. Superior Court*, the Supreme Court expressed grave concerns about the potential unfairness that could result from intervention by the district attorney into wholly civil matters: "The intervention of the district attorney in these proceedings, springing from a civil suit is, indeed, the introduction of the government itself on one side of the litigation, casting the whole issue into a different framework. The weight of government tends naturally to tilt the scales of justice in favor of the party whom the government sponsors." (*Safer v. Superior Court, supra*, 15 Cal.3d at p. 238.) Not surprisingly, appellant raises the same argument here, claiming the district attorney's participation in the dependency hearing was fundamentally unfair and thus violated his rights to due process and equal protection under the law.

Mindful of the concerns expressed in *Safer*, in *Rauber v. Herman* (1991) 229 Cal.App.3d 942 [280 Cal.Rptr. 785], this court considered whether a district attorney exceeds the role of public prosecutor by representing the county in a fair hearing for welfare recipients (Welf. & Inst. Code, § 10950). We observed that, notwithstanding statutes that circumscribe the functions of the district attorney in counties that have county counsel (Gov. Code, §§ 26529, 27642), "certain functions not amounting to the prosecution of a criminal offense may nevertheless fall within the ambit of the district attorney's prosecutorial role, and therefore may be performed by the district attorney even where there is a county counsel." (*Rauber v. Herman, supra*, at p. 948.) "Thus, even in counties where there is a county counsel, '[i]t is . . . clear that the district attorney's duties as public prosecutor embrace more functions than the prosecution of criminal actions.' [Citation] If such functions, though civil in nature, are closely related to and in furtherance of criminal law enforcement, then the district attorney may properly perform them. [Citations]" (*Ibid.*) In concluding the district attorney's participation in a section 10950 hearing was appropriate " 'in aid of and auxiliary to the enforcement of the criminal law' " (*Rauber v. Herman*, at p. 951, quoting *Board of Supervisors v. Simpson* (1951) 36 Cal.2d 671, 674 [227 P.2d 14]), we also relied on authorities holding the district attorney could be collaterally estopped in a later criminal welfare fraud proceeding from relitigating issues raised at the section 10950 hearing. (*Rauber v. Herman*, at pp. 950-951.)

This case differs in significant aspects from both *Rauber* and *Safer*. In *Rauber*, we merely held that the district attorney could represent the county

in a fair hearing regarding welfare benefits. (*Rauber v. Herman, supra*, 229 Cal.App.3d at pp. 945-946.) We did not consider the propriety of the district attorney's participation in the event the county was already represented, by county counsel, as it was in the dependency proceedings in this case. When the district attorney inserts himself into a civil dependency proceeding on behalf of "the interests of the state," where the state has no pending criminal charges and the social services agency is already represented by county counsel, the situation begins to implicate the concerns expressed in *Safer* that the cards of government are unfairly stacked against the parent. However, *Safer* is distinguished from this case, too, because in *Safer* the Supreme Court condemned a district attorney's unauthorized intrusion into a purely private labor dispute. (*Safer v. Superior Court, supra*, 15 Cal.3d 230, 238.) In contrast, the district attorney has a recognized role as a public advocate against child abuse, and certain sections of the Welfare and Institutions Code expressly authorize the district attorney's participation in dependency proceedings under other circumstances.

Given the absence of statutory authorization and the fairness concerns expressed in *Safer*, we conclude the district attorney may not participate in the juvenile dependency proceedings to represent state interests unless there is express statutory authorization. The practice followed by the juvenile court judge may have been appropriate under a repealed provision of the Welfare and Institutions Code (see *ante*, fn. 2), but the present statutory scheme does not permit it. In so holding, we reject the Agency's argument that the district attorney's participation fell within the broad scope of Welfare and Institutions Code section 350, subdivision (a), which authorizes the judge of the juvenile court to "control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." This general grant of authority does not allow the juvenile court to conduct proceedings in a manner that is inconsistent with existing law; it is tempered by more specific statutes, which take precedence. (See *In re Daniel K.* (1998) 61 Cal.App.4th 661, 668 [71 Cal.Rptr.2d 764].)

Willis contends any reasonably competent attorney would have objected to the district attorney's appointment due to the "absolute dearth of authority" permitting it. But we have found this question to be an issue of first impression, and the impropriety of the district attorney's role was hardly so clear-cut as Willis asserts with the 20/20 vision of hindsight. Certainly no statute or other authority expressly prohibited the district attorney from taking part.

But even if we assume counsel's failure to object constituted so great an error that the representation fell below an objective standard of reasonableness under prevailing professional norms (*Strickland v. Washington* (1984)

466 U.S. 668, 694 [104 S.Ct. 2052, 2068, 80 L.Ed.2d 674]), reversal is not appropriate because Willis has failed to demonstrate a reasonable probability that such an objection would have resulted in a more favorable outcome for him. (*People v. Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144]; *In re Diana G., supra,* 10 Cal.App.4th at p. 1479.) It is not enough for the father to show that the errors had some conceivable effect on the outcome of the proceeding; he must show " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218 [233 Cal.Rptr. 404, 729 P.2d 839]; see *People v. Wharton* (1991) 53 Cal.3d 522, 575-576 [280 Cal.Rptr. 631, 809 P.2d 290]; *People v. Karis* (1988) 46 Cal.3d 612, 657 [250 Cal.Rptr. 659, 758 P.2d 1189].)

Willis complains the district attorney assumed an active role in examining witnesses and presenting argument and, in so doing, "imbued the proceedings with an air of criminal prosecution." Indeed, the district attorney did participate vigorously: he took the lead in cross-examining the father and his character witness; he called two witnesses for brief direct examinations; and he took the lead in closing arguments (county counsel having waived its closing in favor of a rebuttal argument). On this record, there can be no doubt the district attorney played a prominent role at the jurisdiction hearing. However, several other lawyers adverse to the father also took part. Willis does not explain why, in the district attorney's absence, counsel for the Agency, counsel for the mother, or counsel for the minors would have been any less thorough or effective. (Cf. *In re Marriage of Brown, supra,* 189 Cal.App.3d at p. 496 [no prejudice from district attorney's participation in spousal support proceedings where retention of private counsel would have caused husband same damages].) Moreover, in addition to the live testimony presented at the jurisdiction hearing, the juvenile court considered and based its decision on videotaped statements from the children, medical reports, and the court's file on the father's previous criminal action.[4] The court also remarked that its decision turned significantly on an evaluation of credibility. Whereas the court found the children, in their videotaped statements, to be credible witnesses, it disbelieved the father's "attempt to trivialize, minimize, [and] explain every physical contact with these minors as playing . . . ." Thus, it appears the district attorney's participation did not add to or subtract from the universe of evidence presented to the juvenile court; it merely altered the manner of its presentation. Under these circumstances,

[4]After the father attempted to offer excerpted portions of this file into evidence, the district attorney objected on hearsay grounds and requested that the clerk of the court procure the entire file. The court took judicial notice of the entire file, without objection from any party.

Willis has not shown a reasonable probability that exclusion of the district attorney would have changed the outcome of this dependency proceeding.[5]

B. *Improper Questions.*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II. *Substantial Evidence Supports the Denial of Reunification.*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

We conclude the father was not denied the effective assistance of counsel and substantial evidence supports the juvenile court's denial of reunification services. The orders of the juvenile court are affirmed.

Corrigan, Acting P. J., and Walker, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 18, 2001.

---

[5]Nor may we presume prejudice, as Willis invites us to do, because the district attorney's participation "so permeated the proceedings" that its impact is "immeasurable." A district attorney's appearance is not so nefarious as to constitute prejudice per se because, in some situations, the juvenile dependency statutes expressly *authorize* the district attorney to participate—on behalf of the minor (Welf. & Inst. Code, §§ 317, subd. (c), 681, subd. (b)), or the social services agency (Welf. & Inst. Code, § 318.5).

\*See footnote, *ante*, page 94.