IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2009 Session

**STATE OF TENNESSEE v. MARCIE LYNN PURSELL**

**Appeal from the Criminal Court for Davidson County**
**No. 2007-B-948     J. Randall Wyatt, Jr., Judge**

---

**No. M2008-01625-CCA-R9-CD - Filed July 23, 2009**

---

The Defendant, Marcie Lynn Pursell, aka Marcie Pursell Frazier, was indicted in the Davidson County Criminal Court for three counts of aggravated child abuse. Thereafter, the Davidson County Juvenile Court concluded that the State had not proved allegations, in a dependent and neglect petition, that the Defendant had injured her child or allowed the child to be injured. The Defendant sought to dismiss the felony child abuse charges in criminal court on collateral estoppel grounds. The trial court denied her motion. The trial court and this Court granted her Rule 9 application for an interlocutory appeal. Following our review of the record, the judgment of the Davidson County Criminal Court finding that the State was not collaterally estopped from pursuing criminal prosecution against the Defendant is affirmed. This case is remanded to the trial court for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Ronald Pursell and Jodie A. Bell, Nashville, Tennessee, for the appellant, Marcie Lynn Pursell.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On April 17, 2007, a Davidson County grand jury indicted the Defendant for three counts of aggravated child abuse of her infant son, J.P. (DOB: 11/16/06).[1] See Tenn. Code Ann. § 39-15-402. Specifically, the indictment alleges that the Defendant "did knowingly, other than by accidental means, treat [J.P.], a child of eight (8) years of age or less, in such a manner as to inflict injury, and the act of abuse resulted in serious bodily injury to the child . . . ." According to the facts relayed in the bill of particulars, these charges stemmed from the following events. Count 1: X-rays taken on December 14, 2006, evidenced possible, multiple, acute (within five to seven days) rib fractures; J.P. was again examined on December 27, 2006, and these fractures were observed as healing at that time. Count 2: Multiple leg fractures were detected on December 27, 2006; it was noted that several of these fractures "require a different mechanism to cause than the rib fractures and differing natures of healing indicate these likely occur at different times." Count 3: A fracture to the humerus was first observed on January 12, 2007, during a "repeat skeletal survey suggesting this was an acute injury on 12-27-06 such that it could not be detected at that time but only after healing had begun."

Previously, on January 3, 2007, the Department of Children's Services (DCS) had sought an Emergency Protective Custody Order in the juvenile court of Davidson County. A Petition for Custody with Request for Emergency Removal and Request to Set for Child Support had been filed against the Defendant to declare J.P. a dependent and neglected child as a result of severe child abuse pursuant to Tennessee Code Annotated section 37-1-102(b)(12)(B), (F), (G).[2] The petition asserted that J.P. was a severely abused child who was not protected from abuse and who failed to thrive under his mother's care. Only the multiple rib fractures confirmed by the December 27, 2006 examination were referenced in the petition; while the skeletal survey had been conducted, the results were not available to DCS at the time the petition was filed. On January 4, 2007, the juvenile court conducted a hearing on the Emergency Protective Custody Order, concluding that the status quo was to be maintained and a Shelter hearing ordered. A Shelter hearing was held on January 22, 2007, and an initial plan of care for J.P. was established.

---

[1] As is the custom of this Court, the victim, a minor, will be referred to by his initials.

[2] As relevant here, under subsection (b)(12) of Tennessee Code Annotated section 37-1-102, a "dependent and neglected child" means a child:

    (B) Whose parent, guardian or person with whom the child lives, by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for such child;

    . . . .

    (F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others; [or]

    (G) Who is suffering from abuse or neglect . . . .

The neglect, dependent, and abuse trial began on February 14, 2008. The State alleged that J.P. sustained rib fractures, leg fractures, and a humerus fracture (the exact injuries forming the basis of the criminal indictment). On March 4, 2008, the juvenile court entered an order dismissing the dependent and neglect petition filed against the Defendant. The juvenile court made certain specific findings in its order:

> (1) That the [c]ourt has already dismissed all neglect and dependent issues.

> (2) There is no evidence that [the Defendant] inflicted any injuries on [J.P.]. Further, there is no evidence that [the Defendant] was aware, knew of, or had any reason to know of the injuries sustained by [J.P.].

> (3) That the State has asserted that [J.P.'s] injuries were the result of non-accidental trauma. During the course of the State's proof, the defense demonstrated other alternative theories that the injuries could have resulted from metabolic bone disease, vitamin deficiencies or iatrogenic injuries. Based upon the proof presented by the State, there is not clear and convincing evidence that establishes how the injuries of [J.P.] were incurred.

The juvenile court also re-instituted visitation between the Defendant and J.P. There was no appeal of this order, and all rights to do so have since expired.

Thereafter, on April 10, 2008, the Defendant, relying on the juvenile court's determinations, filed a motion to dismiss the criminal abuse charges against her, arguing that any subsequent criminal prosecution was barred by the doctrines of res judicata and collateral estoppel, an element of double jeopardy as protected by the Fifth Amendment of the United States Constitution. The State responded, contesting the applicability of the doctrines of collateral estoppel and res judicata in this situation and arguing that the principles of double jeopardy had not been violated. A hearing was held on May 28, 2008.

The trial court denied the Defendant's motion by order dated June 24, 2008. First, regarding the Defendant's collateral estoppel claim, the trial court, interpreting Tennessee Code Annotated section 37-1-103(a)(4),[3] concluded that the juvenile court did not have the authority to adjudicate a charge of aggravated child abuse. Because the juvenile court did not have jurisdiction over the aggravated child abuse allegation, the juvenile court was not a court of "competent jurisdiction" and its findings were not entitled to issue-preclusive effect. As for the doctrine of res judicata, the trial court determined that the juvenile courts and criminal courts were not courts of concurrent

---

[3] Pursuant to section 37-1-103(a)(4), the juvenile court has exclusive original jurisdiction of "[p]rosecutions under § 37-1-412 or § 39-15-401 [child abuse and neglect] unless the case is bound over to the grand jury by the juvenile court or the defendant is originally charged with a greater offense of which violation of § 37-1-412 or § 39-15-401 is a lesser included offense . . . ." As noted by the trial court, child abuse and neglect is a lesser included offense of aggravated child abuse and neglect.

jurisdiction regarding the crime of aggravated child abuse and, thus, the order of the juvenile court was not entitled to claim-preclusive effect over the criminal court.

The Defendant sought permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court and this Court granted the Defendant's Rule 9 application.

**Analysis**

As presented by the Defendant, the issue before us is whether the doctrines of collateral estoppel or res judicata, as encompassed by double jeopardy principles, bar the State from proceeding against the Defendant in criminal court for three counts of aggravated child abuse because the same factual issues were resolved in the Defendant's favor in the juvenile proceeding. The state and federal constitutions protect against multiple convictions or punishments for a single offense. U.S. Const. amend. V; Tenn. Const. art. 1, § 10. Double jeopardy typically and essentially protects (1) against a second prosecution after an acquittal; (2) against a second prosecution after conviction; and (3) against multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citations omitted). In Ashe v. Swenson, 397 U.S. 436 (1970), the United States Supreme Court recognized that the doctrine of collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy," and it "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 445. In Tennessee, collateral estoppel has been recognized as a part of our criminal jurisprudence for a relatively short period of time. See State v. Joey Dewayne Thompson, -- S.W.3d --, 2009 WL 1228309, at *7 (Tenn. May 6, 2009).

In Massengill v. Scott, 738 S.W.2d 629 (Tenn. 1987), our supreme court summarized the related doctrines of res judicata and collateral estoppel:

> The doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of res judicata, and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment. . . .
>
> Res judicata bars a second suit between the same parties and their privies on the same cause of action as to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. To support a plea of res judicata, it must be shown that the judgment in the prior case was final and concluded the rights of the party against whom it is asserted. It is also necessary to show that both cases involved the same cause of action. To sustain a plea of collateral estoppel it

-4-

must be shown, inter alia, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit.

738 S.W.2d at 631-32 (quoting 22 Tenn. Jur. pp. 111-12). "Once an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different." Gibson v. Trant, 58 S.W.3d 103, 113 (Tenn. 2001). The doctrine of collateral estoppel "applies only when the issue involved in the case under consideration has already been litigated in a prior suit between the same parties . . . if the determination of such issue in the former action was necessary to the judgment." State v. Scarbrough, 181 S.W.3d 650, 654-55 (Tenn. 2005) (quotation omitted).

The burden is on the defendant to demonstrate that the issue he seeks to foreclose from consideration was necessarily decided in the first trial. Dowling v. United States, 493 U.S. 342, 350 (1990); see also State v. Vickers, 985 S.W.2d 1, 7-8 (Tenn. Crim. App. 1997) ("[T]he burden is on the appellant to prove by *clear and convincing evidence* that, in the earlier trial, the court or a jury necessarily decided the issue of fact which is an element at issue in the present indictment.") (emphasis in original) (citations omitted). To determine whether a defendant has met this burden, a court must examine the record of the first trial, "taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe, 397 U.S. at 444 (footnote and internal quotation marks omitted).

This appears to be a matter of first impression in the State of Tennessee: whether the doctrine of collateral estoppel acts to bar the relitigation of a factual finding in a juvenile dependency proceeding in a subsequent criminal trial. We have found guidance in the decisions of other jurisdictions that have addressed the issue.

An Illinois appellate court, in People v. Moreno, 744 N.E.2d 906 (2001), held that collateral estoppel did not bar a criminal prosecution against the defendant for aggravated battery of a child even though every factual issue to be tried was resolved in the Defendant's favor in a prior wardship proceeding in juvenile court. 744 N.E.2d at 912. In Moreno, the State filed juvenile wardship petitions alleging the defendant's four children were abused. Id. at 907. The State also charged the defendant with aggravated battery of a child. Id. The juvenile and criminal cases were grounded on the defendant's alleged abuse of her seven-month-old nephew, G.M. Id. Following the juvenile adjudicatory hearing, the trial court ruled that the State failed to prove by a preponderance of the evidence that the defendant abused G.M. Id. at 909. The defendant then sought to have the criminal charges dismissed, arguing that the State was collaterally estopped from proceeding in criminal court because the same factual issues were resolved in her favor in the juvenile proceeding. Id. at 910. The criminal trial court disagreed. Id. On appeal, the Illinois appellate court affirmed, distinguishing juvenile and criminal proceedings and relying on public policy considerations:

In the juvenile proceeding, the ultimate litigated issue was whether the minor children of defendant were abused due to defendant's involvement with the injuries of G.M.; in the subsequent criminal proceeding, the ultimate litigated issue will be whether the defendant is criminally culpable for the injuries to G.M. In the juvenile proceeding, the State's purpose is protection of defendant's minor children; in the criminal proceeding, the State's purpose is discovering if defendant injured G.M. and punishing her if found guilty. The differences of purpose and goal in the civil and criminal procedures are 'very real.'

Id. at 912 (citation omitted). The court also noted that a criminal trial is "the exclusive forum for determining guilt or innocence" and that the State lacked "a full and fair opportunity to litigate" the defendant's criminal culpability in the juvenile proceedings. Id.

The Moreno Court relied, in part, on two appellate court decisions from California and Washington—People v. Percifull, 12 Cal. Rptr. 2d 331 (Cal. Ct. App. 1992), and State v. Cleveland, 794 P.2d 546 (Wash. Ct. App. 1990):

In Percifull, the California appellate court accepted that the threshold requirements of collateral estoppel had been established where a juvenile court concluded that the State had not proved allegations in a dependency petition that the parents had injured their child or allowed him to be injured, and the parents then moved to dismiss felony child abuse and endangerment charges against them arising out of the same facts. 12 Cal. Rptr. 2d at 331-32. Nonetheless, the court determined that policy considerations required that prosecution be allowed. The court noted in particular the importance of preserving the criminal trial process as the exclusive forum for determining guilt or innocence, and the ability of a trial, as opposed to a dependency proceeding, to vindicate society's insistence that every citizen obey the penal laws. Id. at 333-34.

In Cleveland, the Washington appellate court addressed the trial court's finding that the State had not shown by a preponderance of the evidence that sexual abuse alleged in a petition for dependency had occurred, and defendant thereafter moved for dismissal of criminal charges of statutory rape and indecent liberties, asserting that the criminal charges were based on allegations of sexual abuse arising from the same facts. 794 P.2d at 547. The appellate court found that collateral estoppel could not be applied because of public policy. Id. at 551. The court explained that because dependency proceedings are often attended with a sense of urgency, are held as promptly as reasonably possible, and are narrowly focused on the welfare of the child, the State neither needs nor performs the extensive preparation typically required for felony trials. Id. The appellate court also considered that more resources are used in developing a felony prosecution than in a dependency hearing, dependency is not decided by a jury, and if faced with the application of collateral estoppel, the State may become reluctant to conduct

dependency proceedings in cases where one or more of the same issues would arise
in subsequent criminal prosecutions.   Id.

Moreno, 744 N.E.2d at 911.  Other states have reviewed the issue to varying degrees and reached similar results.  See, e.g., Carlene Northcutt v. Commonwealth, No. 2002-CA-000491-MR, 2003 WL 22061637 (Ky. Ct. App. Sept. 5, 2003); State v. Chad A. Felter, No. H-99-001, 1999 WL 727096 (Ohio Ct. App., 6th Cir., Sept. 17, 1999); People v. Gates, 452 N.W.2d 627 (Mich. 1990); Gregory v. Commonwealth, 610 S.W.2d 598 (Ky. 1980).

Here, the juvenile court action was brought to determine whether J.P. was a dependent and neglected child pursuant to Tennessee Code Annotated section 37-1-102(b)(12), in that he was allegedly a severely abused child who had not been protected from abuse and who failed to thrive under the care of his mother, the Defendant.  Under Tennessee law, in a prosecution for aggravated child abuse and neglect, the State must prove: (1) a defendant knowingly, other than by accidental means, treated a child eight years of age or less, in such a manner as to inflict injury; and (2) the act of abuse resulted in serious bodily injury.  See Tenn. Code Ann. §§ 39-15-401(a) & -402(a)(1).  One is for the protection of the child, and the other is to punish individuals found guilty of wrongdoing. The importance of the criminal trial process must be preserved.  We find the rationale of Moreno and the other cases cited herein persuasive.  The juvenile court dependent and neglect proceeding did not have collateral estoppel effect blocking the State from bringing criminal charges against the Defendant.  We emphasize that, in the juvenile court proceeding, the Defendant was not being prosecuted for a crime; her freedom was not in jeopardy.

**Conclusion**

The trial court did not err in determining that the State was not estopped from maintaining criminal prosecution against the Defendant for three counts of aggravated child abuse.  The judgment is affirmed, and this case is remanded to the trial court for further proceedings.

_____
DAVID H. WELLES, JUDGE