Filed 1/15/16  In re A.E. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.E., a Person Coming Under the Juvenile Court Law. | C078800 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. J06186) |
| Plaintiff and Respondent, | |
| v. | |
| R.M., | |
| Defendant and Appellant. | |

Appellant R.M., father of the minor, appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  He contends the juvenile court abused its discretion in denying him reunification services.  He also contends the orders must be reversed because he did not have proper notice of the

---

[1]  Subsequent undesignated statutory references are to the Welfare and Institutions Code.

1

dependency proceedings and his trial counsel was ineffective for failure to file a motion objecting to the lack of notice.  We affirm.

## I.  BACKGROUND

On December 10, 2012, the San Joaquin County Human Services Agency (the Agency) filed a section 300 petition on behalf of the then seven-year-old minor and his younger half sibling.[2]  The petition alleged the minor's mother attempted to harm herself with an overdose of psychotropic medication and was placed on a section 5150 hold.[3]  It was reported mother had substance abuse and mental health issues.  It was also reported mother physically abused the minor's half sibling on a regular basis and the minor was afraid of mother.  Mother was also involved in domestic violence with the father of the minor's half sibling.  The minor lived with his maternal grandmother but she did not have legal custody and had been unable to protect the minor from risk of harm.  The identity of minor's father was unknown.  Shortly after the minor was detained, mother identified his father as "Alexander E." but no contact information was known.  After a contested jurisdiction hearing, the juvenile court found the allegations of the petition true.

Prior to the April 2013 disposition hearing, mother identified appellant and another man, Victor (last name unknown), as possible fathers.  Mother's oldest child, R.M.J., is appellant's son and lived with appellant.  An Absent Parent Locator was submitted and the report indicates the Agency received an address on North Pershing Avenue.  The social worker spoke with appellant, who stated that there was a possibility that he was the father of the minor.  He did not, thereafter, participate or provide family background information to the Agency.  The disposition report states that notice of the

---

[2]  This appeal relates only to minor A.E., not his half sibling.

[3]  Section 5150 provides that a person may be detained in a mental health facility for 72 hours who, as a result of a mental disorder, is a danger to herself or others or is gravely disabled.

2

hearing was mailed to appellant via first class mail, but no proof of service was submitted.

The juvenile court adjudged the minor a dependent child of the court. The Agency recommended, and the juvenile court ordered, reunification services for mother. The Agency asserted that appellant did not meet the criteria to be declared a presumed parent and, therefore, would be required to prove paternity prior to qualifying for reunification services. The juvenile court found appellant to be an alleged father.

Notice of the six-month review hearing was sent to appellant at an East Alpine Avenue address, although the report indicated his whereabouts were unknown. Services for mother were continued at the review hearing.

The Agency submitted two additional Absent Parent Locators shortly before the March 6, 2014, 12-month review hearing. Certified letters were mailed to the most recent address listed for appellant and they were returned. The Agency had inquired about appellant's whereabouts from the minor's mother and grandmother to no avail. Notice for the March 6, 2014, hearing was sent to an East Alpine Avenue address.

Minor had begun to display developmental delays thought to be associated with Fetal Alcohol Syndrome/Spectrum Disorder, for which services were continually provided. He sometimes struggled with daily living skills and communicating his needs to his foster parents. However, the minor's therapist reported great progress in his development due to the supportive nature of the foster parents. Mother was in residential treatment with a completion date in May 2014. At the 12-month review hearing, mother's services were continued and the matter was set for a review hearing in June 2014.

The Agency's June 2014 status report indicated that, due to the minor's posttraumatic stress disorder, sensitivity to his environment, and need for safety, in order to remain successful the minor required a secure, stable, and regimented routine that did not allow for chaos or instability. As such, the minor continued to thrive in his placement

3

with his foster parents, who provided "a great deal of nurturing, diligence, routine and stability," and they wished to adopt him. Although mother had been participating in services, her stability was only beginning and was uncertain. The Agency recommended termination of mother's reunification services.

The report was served on appellant at the East Alpine Avenue address. The juvenile court found notice had been given as required by law, and in August 2014, terminated mother's reunification services and set the matter for a section 366.26 hearing. In August 2014, notice of the December 2014 section 366.26 hearing was sent to appellant at the East Alpine Avenue address.

On October 22, 2014, the Agency filed a declaration in support of its attempts to determine the identity of the minor's father and a signed order for publication of termination of parental rights. Sometime between the August 2014 hearing terminating mother's services, and the December 2014 report prepared for the section 366.26 hearing, mother informed the Agency that appellant was now interested in gaining custody of the minor.

Appellant was located in November 2014, after another Absent Parent Locator revealed he had "provided a new address to MEDS-ID on October 28, 2014." On November 5, 2014, appellant contacted the social worker, indicated he may be minor's father, and provided another address on Gunton Way. Although the record is unclear, it appears the parent locator returned with an address on South Fresno Street. Appellant was served with a copy of the section 366.26 hearing report on November 19, 2014, at his subsequently provided address on Gunton Way.

Appellant first appeared at the December 3, 2014, hearing. Asked if he was the minor's father, he stated it was a "possibility." Accordingly, the juvenile court ordered a paternity test and the section 366.26 hearing was scheduled for January 28, 2015.

At the January 28, 2015, hearing, the juvenile court found appellant to be the biological father and appointed him counsel. The Agency filed a report recommending

4

appellant be denied services. Appellant requested visitation and a hearing regarding reunification services was set for February 18, 2015.

Appellant appeared with counsel at the February 18, 2015, hearing. Visitation was temporarily denied and the hearing regarding services was continued to March 6, 2015. Appellant testified at the March 6, 2015, hearing and requested the juvenile court provide him with reunification services. He stated he found out about the proceedings in October or November through mother, after his son, R.M.J., (whose mother is also the minor's mother) relayed the information from mother. Appellant testified that R.M.J. was saddened by the prospect of another family adopting the minor and he and his wife decided to see what they could do to keep the children together. Appellant testified he has full custody of his other children, including R.M.J., the older sibling of the minor, and was willing to participate in counseling or classes in order to obtain custody of the minor. The juvenile court denied reunification services and proceeded with the section 366.26 hearing.

The Agency reported the near 10-year-old minor had begun receiving services for a diagnosis on the autism spectrum. Minor had difficulty with any changes to his schedule and thrived with a structured and consistent environment. The minor's needs were being met by his prospective adoptive parents, both of whom genuinely loved him, and the Agency recommended termination of parental rights. Over both mother and appellant's objection, the juvenile court terminated parental rights and freed the minor for adoption. Appellant appealed from the March 6, 2015, orders.

Additional facts relevant to the issues presented are contained in the discussion of the issues.

## II. DISCUSSION

### A. *Denial of Services*

The law recognizes three types of fathers: presumed, alleged, and biological. Alleged and biological fathers do not possess the same rights as presumed fathers.

(*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595-596.) As a biological, but not presumed father, appellant was not entitled to reunification services. "The provision of reunification services to a biological father is discretionary; the court '*may* order [such] services . . . if the court determines . . . the services will benefit the child.' (§ 361.5, subd. (a), italics added.)" (*In re Alanna A.* (2005) 135 Cal.App.4th 555, 564; compare *In re Zacharia D.* (1993) 6 Cal.4th 435, 451 [presumed father entitled to reunification services].)

Here, the juvenile court reasonably concluded that reunification services with appellant would not benefit the minor or be in his best interests. The minor was almost 10 years old and had no relationship with appellant. He had been in foster care for over two years, was doing well in his prospective adoptive parents' care, where he had been for over a year, and due to his special needs was in particular need of stability. The minor had demonstrated tendencies on the autism spectrum and required consistency and structure in his life and schedule. It was also reported that changes for the minor would cause him anxiety and be detrimental to his emotional stability. Introducing a new "parent" into the picture would most certainly cause changes in his life, and commencing reunification services with an unknown person would undoubtedly impinge upon his regimented schedule.

Appellant argues that reunification services would be beneficial to the minor because appellant has custody of the minor's older sibling and a half sibling. He emphasizes the minor's attachment to the biological grandmother who raised him, and the minor's acknowledgment that mother is his "mom," as support for the argument that the minor would benefit from establishing a relationship with appellant and his children, as the minor's "biological family." The gap in this logic is apparent. The minor had a previous relationship with his grandmother and mother. But appellant is a complete stranger to the minor. The mere fact that appellant has custody of the minor's older sibling (whom the minor saw a few times a year) and a half sibling (with whom the minor

6

had no relationship) is insufficient to establish a benefit to services under these circumstances.

This minor requires an especially consistent and structured schedule and has been thriving while being provided that environment. The juvenile court did not abuse its discretion in denying appellant reunification services.

B.    *Notice of Proceedings*

1. Forfeiture

In addition to appellant's substantive challenge to the denial of services, he also contends the order terminating his parental rights must be set aside because he was not provided with proper notice of the jurisdiction and disposition hearings. We conclude he has forfeited his right to challenge the sufficiency of the notice of proceedings.

Due process requires that, before depriving a parent of his or her parental rights, the state "must afford [the parent] adequate notice and an opportunity to be heard." (*In re B.G.* (1974) 11 Cal.3d 679, 689.) However, defects in notice are forfeited when a parent acquiesces to the juvenile court's jurisdiction and actively participates in its proceedings. (*Ibid.*; See also *In re Gilberto M.* (1992) 6 Cal.App.4th 1194, 1198-1199, 1200 ["by his participation in the section 366.21 hearing, [father] acknowledged the jurisdiction of the juvenile court and is precluded from challenging it here" (*In re Gilberto M., supra*, at p. 1200)]; see also *In re Etherington* (1950) 35 Cal.2d 863, 867 [mother's appearance and participation in juvenile court hearing without objection as to timeliness of notice constituted a waiver of any insufficiency in notice as a jurisdictional requirement].)

Appellant argues the notice of the dependency proceedings was defective because notice was not sent to his last known address or usual place of abode. He fails, however, to support this argument with evidence in the record, as there is no evidence as to where he was living at the time notices were to be sent, and no evidence that the Agency knew or should have known he was living at those places at the time. Nor is there any evidence

7

in the record that, had the Agency made certain reasonable inquiries, it would have discovered appellant's whereabouts.

The limits of the appellate record are possibly due, at least in part, to the fact appellant did not object to lack of notice in the juvenile court, as was required in order to raise the issue on appeal. Appellant did not object to proceeding with substantive hearings until the notice issue could be litigated. Instead, he appeared at a pre-section 366.26 hearing without objecting to the lack of notice, stating he might be the minor's father. He then appeared at the January 28, 2015, section 366.26 hearing, at which the juvenile court found him to be the biological father and appointed him counsel. Appellant requested visitation and a hearing regarding services was set for February 18, 2015. He did not raise the issue of lack of notice at either of these hearings.

Appellant appeared with his counsel at the February 18, 2015, hearing. Visitation was temporarily denied and the hearing was continued to March 6, 2015. Again, no mention of the purported lack of notice was made. Appellant appeared with counsel at the March 6, 2015, hearing. He testified at the hearing in an attempt to persuade the court to provide him reunification services, but he did not raise the lack of notice issue. After reunification services were denied, the juvenile court proceeded with the section 366.26 hearing. Although appellant objected to termination of parental rights, he did not raise the lack of notice issue.

"A defect in notice, as we have discussed, is a most serious issue, potentially jeopardizing the integrity of the entire judicial process. However, when a parent had the opportunity to present that issue to the juvenile court and failed to do so, appellate courts routinely refused to exercise their limited discretion to consider the matter on appeal. This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court." (*In re Wilford J*. (2005) 131 Cal.App.4th 742, 754.)

Thus, even if, despite the efforts of the Agency, notice of the dependency proceedings was defective, which we do not decide, because appellant deprived the juvenile court of the opportunity to correct the argued mistake, he has forfeited the right to raise this issue on appeal. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293; *In re B.G., supra,* 11 Cal.3d at p. 689; *In re P.A.* (2007) 155 Cal.App.4th 1197, 1210.) And it is for this same reason that he has forfeited his argument, also made on appeal, that the notice that *was* sent was defective for failing to include Judicial Council Forms, form JV-505 (paternity waiver of rights) and a statement that the proceedings could result in the termination of parental rights.

2. Ineffective Assistance of Counsel

In association with his argument that he was not provided proper notice of the dependency proceedings, appellant also argues that his trial counsel was ineffective for failing to challenge the juvenile court's jurisdiction based on the lack of notice, or dispute the authority of the juvenile court to terminate parental rights.

"Under the standard test for a claim of ineffective assistance of counsel, [a parent] is required to demonstrate both that counsel's representation fell below an objective standard of reasonableness and resulting prejudice. [Citation.] A violation of the right of effective counsel is reviewed under the test of harmless error. [Citation.] 'Thus the parent must demonstrate that it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' [Citation.]" (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.)

"In general, the proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus, not appeal." (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98, fn. 1.) That is because, "[t]he establishment of ineffective assistance of counsel most commonly requires a presentation which goes beyond the record of the trial [and] . . . [a]ction taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record." (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 243.) Unless

9

there simply could be no satisfactory explanation for trial counsel's tactics, a party alleging ineffective assistance of counsel cannot seek review of his or her claim by way of direct appeal. (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.)

Here, there could be any number of reasons trial counsel did not litigate the alleged lack of notice issue, none of which are dispelled by the record. For example, counsel could have been aware that appellant was not living at an address that could have been discovered by the Agency at the time the proceedings commenced. Or counsel could have known appellant did, in fact, have actual notice of the proceedings. Without some showing beyond this record, appellant cannot establish that counsel did not have a satisfactory explanation for not litigating lack of notice.

Likewise, appellant cannot establish prejudice from the failure to litigate the notice issue. Appellant argues that, had counsel litigated the issue of notice, there is "more than a reasonable chance the juvenile court would have had to vacate the section 366.26 hearing to consider whether to grant reunification services under section 361.5, subdivision (a), at a dispositional hearing." Accepting this premise for purposes of argument, it does not appear reasonably likely appellant would have received reunification services or that the result of these proceedings would have been more favorable to him. As a biological father, the provision of reunification services is wholly discretionary and the juvenile court denied appellant's request for services. It is not reasonably likely the posture of the case (whether pre- or post-termination of mother's services) would have made a difference in the juvenile court's exercise of discretion. The primary basis for denying appellant services was that it was not in the minors' best interests because of the minor's age, mental state, and lack of relationship with appellant. Those factors would remain even if the juvenile court were to go back and start the case from disposition again.

## III.  DISPOSITION

The orders of the juvenile court are affirmed.


/S/

_____

RENNER, J.


We concur:


/S/

_____

RAYE, P. J.


/S/

_____

ROBIE, J.