Filed 1/23/14  In re Alexis M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re In The Matter of ALEXIS M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B248966 (Super. Ct. No. J1395693) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD PROTECTIVE SERVICES, Petitioner and Respondent, v. CHRISTINA D., Respondent and Appellant. | |

Christina D. (mother) appeals from an order terminating her parental rights to her child, Alexis M. (child), now five years old, and selecting adoption as the permanent plan.  (Welf. & Inst. Code, § 366.26.)[1]  Mother argues that her counsel was ineffective because he failed to present an offer of proof as to the beneficial relationship exception to the termination of parental rights.  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

---

[1] Unless otherwise stated, all statutory references are to the Welfare and Institutions Code.

*Factual and Procedural Background*

"[M]other has a long history of addiction to pain medications dating back to 2004 . . . ."  In February 2011 mother "was admitted to the hospital with an acute overdose" of various drugs.  She had been found "passed out on the floor."  Mother's probation officer ordered her to enter a residential drug treatment program.  She entered the program but failed to complete it.

In November 2011 child was found wandering in the street outside her home while mother was asleep inside under the influence of prescription drugs.  A social worker inspected the home, which was in a state of "disarray."  The social worker concluded that the home "was hazardous for an active three year old."  The juvenile court ordered that child be detained and removed from mother's home.  Mother was granted the right to visit child three times a week provided that she submitted to random drug testing and did not test positive.  Mother "relapsed . . . [on] January 4, 2012, and spent close to thirty days in custody . . . ."

On January 26, 2012, child was declared a dependent of the juvenile court.  Santa Barbara Child Welfare Services (CWS) was ordered to provide reunification services to mother.

On January 30, 2012, mother entered Project Preemie, a residential treatment program.  She was discharged from the program in June 2012 because of medical problems related to "Pseudo Seizures."  After her discharge, she enrolled in an outpatient treatment program.  According to a status review report signed on June 27, 2012, during the review period mother had "consistently tested clean for all illegal substances."  Mother had also "consistently visited with her daughter twice a week."

In July 2012 mother relapsed.  An addendum report signed on July 17, 2012, notes that "mother has consistently tested positive for opiates since July 5, 2012, although she denies any abuse."  Mother missed a drug test scheduled for July 15, 2012.  She was discharged from the Family Drug Treatment program for "failure to make progress during the past six months in addressing her addiction to pain medications."

2

On July 31, 2012, mother was admitted to the Another Road Detox treatment program. "She was discharged on August 2, 2012 and did not return to treatment until August 14, 2012." On September 3, 2012, she missed a drug test. On September 27, 2012, the juvenile court granted CWS's request to "change the case plan visitation section" to provide that, if "mother tests positive or misses a drug test, visitations will be suspended until the mother can provide two consecutive clean test[s]."

In a status review report signed on January 2, 2013, CWS observed that during the review period mother had missed 25 group meetings, had tested positive for drugs on four occasions, and had missed four drug tests. She was "unsuccessfully discharged" from the Recovery Way treatment program. On December 12, 2012, mother's visits with child were suspended because she had tested positive for morphine. CWS requested that the juvenile court terminate mother's reunification services and set a selection and implementation hearing pursuant to section 366.26. The court granted the request.

In the section 366.26 report signed on April 22, 2013, CWS recommended that mother's parental rights be terminated. CWS noted that, since November 2011, child has been living with her maternal grandmother, who is committed to adopting her. Except for a 15-minute visit on Easter Sunday, mother "has not visited with [child] since December of 2012, due to not being enrolled in a treatment program, failure to provide a clean drug test, and her non-compliance with the terms and conditions of her probation, which has resulted in a warrant for her arrest."

The section 366.26 hearing was set for May 2, 2013. On that date mother's counsel stated that his client had asked him to calendar the matter for a contested hearing. But counsel informed the court that "none of the exceptions that would defeat the preference for adoption apply, based on my review of the case." Counsel said that he had "advised the mother that the only option available to us at this point is to rest." The court continued the hearing to May 16, 2013, and told mother's counsel that he was "required to file an offer of proof" by May 9.

3

At the hearing on May 16, 2013, mother's counsel declared, "I've reviewed the file and I'm unable to file an offer of proof. We would be resting." The juvenile court terminated mother's parental rights and selected adoption as the permanent plan.

*Beneficial Relationship Exception*

"If the court finds [at a section 366.26 hearing] that a child may not be returned to his or her parent and is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental to the child under one of [several] specified exceptions. [Citations.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826.) The court may "require an offer of proof before conducting a contested hearing on one of the statutory exceptions to termination of parental rights." (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1122.) Mother contends that her counsel was ineffective for failing to present an offer of proof as to the beneficial relationship exception, which applies if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 336.26, subd. (c)(1)(B)(i).) "A beneficial relationship 'is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." [Citation.]' " (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643.)

*Ineffective Assistance of Counsel in Dependency Proceedings*

A parent in a dependency proceeding has a statutory right to "competent counsel." (§ 317.5, subd. (a).) At the termination of parental rights stage, a parent may also have a constitutional right to the effective assistance of counsel. (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1407.) To establish that counsel was incompetent or ineffective, a parent must show that counsel's performance was deficient because it "fell below an objective standard of reasonableness under prevailing professional norms [citation]." (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 102.) The parent must also show that counsel's deficient performance "made a determinative difference in the outcome, rendering the proceedings fundamentally unfair in that it is reasonably probable that but for such [deficiency], a determination more favorable for [the parent's] interests would have

4

resulted.' [Citations.] In short, [mother] has the burden of proving both that [her] attorney's representation was deficient and that this deficiency resulted in prejudice. [Citation.]" (*Id*., at p. 98; see also *Strickland v. Washington* (1984) 466 U.S. 668, 696 [104 S.Ct. 2052, 80 L.Ed.2d 674] ["A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors"].)[2]

*Mother Was Not Denied the Effective Assistance of Counsel*

We need not determine whether counsel performed deficiently by not presenting an offer of proof as to the beneficial relationship exception. Even if counsel's performance were deficient, it would not have prejudiced mother because she has failed to show there is a reasonable probability that, but for counsel's deficiency, the outcome would have been different. The outcome would have been different only if mother had succeeded in proving the beneficial relationship exception. (See *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295 ["The party claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies"].)

The evidence does not establish the exception's first prong: that mother "maintained regular visitation and contact with the child." (§ 336.26, subd. (c)(1)(B)(i).) In December 2012 her visitation rights were suspended because she had tested positive for morphine. At the time of the section 366.26 hearing in May 2013, mother had visited child only once in the previous five months, and that one visit lasted only 15 minutes. We reject mother's contention that the suspension of her visitation rights was unreasonable. Mother had fair warning that a positive test would result in a suspension. On September 27, 2012, the juvenile court ordered that, if "mother tests positive or misses a drug test, visitations will be suspended until the mother can provide two

---

[2] We reject mother's contention that "the *Chapman* standard of harmless beyond a reasonable doubt, should apply in this case." (*Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.)

consecutive clean test[s]." If mother wanted visitation to resume, she should have provided the required two clean tests.

The evidence also does not establish the exception's second prong: that "the child would benefit from continuing the relationship." (§ 336.26, subd. (c)(1)(B)(i).) "Satisfying the second prong requires the parent to prove that 'severing the natural parent-child relationship would deprive the child of a *substantial,* positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent.' [Citation.] Evidence that a parent has maintained ' "frequent and loving contact" is not sufficient to establish the existence of a beneficial parental relationship.' [Citation.]" (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.) "[A] child should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.)

The evidence does not show " 'a *substantial,* positive emotional attachment [to mother] such that the child would be *greatly* harmed' " if the relationship were terminated. (*In re Marcelo B.*, *supra*, 209 Cal.App.4th at p. 643.) The evidence shows only that mother had a friendly or familiar relationship with child. The maternal grandmother reported that child "looks forward to visits with the mother." During visits, mother "would play games, read, and or complete crafts." Until visits were suspended in December 2012, mother visited child every Saturday. Mother told social workers that child referred to Saturday as "mommy day." April Jackson, who works for Hope Services, "reported that [child] occasionally . . . says she misses her mother, although her main attachment figure is the [maternal] grandmother."

"[A] *parental* relationship is necessary for the exception to apply, not merely a friendly or familiar one. [Citations.] . . . [A] child should not be deprived of an adoptive parent when[, as here,] the natural parent has maintained a relationship that may be beneficial to some degree but does not meet the child's need for a parent." (*In re Jasmine*

6

*D., supra,* 78 Cal.App.4th at p. 1350.)  Thus, it is not reasonably probable that mother would have established the beneficial relationship exception but for counsel's allegedly unprofessional error in not presenting an offer of proof.  "This is not the extraordinary case where an adoption should have been foreclosed by the exception provided in section 366.26, subdivision (c)(1)(A) [now (c)(1)(B)(i) ]."  (***Id***., at p. 1352.)

*Disposition*

The judgment (order terminating parental rights and selecting adoption as the permanent plan) is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

David A. Hamilton, under appointment by the Court of Appeal, for Appellant.

Dennis A. Marshall, County Counsel, County of Santa Barbara and Bo L. Bae, Deputy, for Respondent.