Filed 11/10/14  In re Isabelle P. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Isabelle P. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>E.P.,<br><br>    Defendant and Appellant. | B255409<br>(Los Angeles County<br>Super. Ct. No. CK98775) |

APPEAL from an order of the Superior Court of Los Angeles County, Zeke D. Zeidler, Judge.  Affirmed.

Jonathan B. Steiner, California Appellate Project Executive Director, and Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Appellant E.P. (Father) seeks reversal of the juvenile court's custody order of February 21, 2014. He contends his trial counsel was ineffective for failing to join in the paternal grandparents' petition for modification seeking custody of Father's two children, and for failing to object to transfer of custody from a maternal relative to family friends who lived out of state. For the reasons discussed, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

The minors, Isabelle P. and A.P., then four and 19 months, came to the attention of the Department of Children and Family Services (DCFS) in August 2012. A caller reported that the children's mother, Briana F. (Mother), who was on probation for burglary at the time, had overdosed and been taken to jail.[1] After her release, Mother continued to use drugs to the point of passing out and was taken to a hospital for treatment. The children were with their maternal grandmother, but the caller was concerned Mother would attempt to regain custody when released from the hospital.[2] Isabelle reported seeing Mother drink and fall into a deep sleep from which she could not be roused. Isabelle also reported that Mother slapped her and threatened to kill the maternal grandmother. The maternal grandmother stated Mother was physically abusive toward her. She also said that Father had been involved with a gang and had been deported. She and others --

---

[1]     Mother is not a party to this appeal.

[2]     There had been a prior referral in March 2010. Mother had been arrested for public intoxication while with the children at an amusement park. She resisted arrest and assaulted two police officers. The children were released to their maternal grandmother. The maternal grandmother reported another incident where Mother, driving while on drugs, flipped a car with Isabelle in the back seat. That incident had not been reported or investigated.

including the victim -- reported that Father had molested a 13-year old girl a few years earlier. Mother confirmed a long history of drug abuse.

The dependency proceeding was filed in Orange County. The parties stipulated to jurisdiction under Welfare and Institutions Code section 300, subdivision (b) (failure to protect) based on the following factual allegations: Mother had a history of substance abuse and an ongoing substance abuse problem; Mother was hospitalized in August 2012 after using drugs; Mother had been unconscious due to drug or alcohol use while in the presence of the children on more than one occasion; Mother slapped Isabelle, leaving a mark on her face; Mother engaged in multiple acts of domestic violence with the maternal grandmother in the children's presence; Father did not have appropriate housing and was unable to assume custody of the children; and Father had been arrested and deported for possession of marijuana.

At the time of the detention, the children were living with the maternal grandmother and visiting the "paternal grandparents," Virginia L. and Emilio M., one or two days per week.[3] They had only limited contact with Father. In September 2012, after a short placement in a foster home, the children were transferred to the paternal grandparents' home.[4] In the April 2013 status report, the

---

[3]    The reports refer to Virginia and Emilio as the paternal grandparents, but Emilio is not biologically related to the children or married to Virginia.

[4]    Mother had not wanted the children to be placed with the paternal grandparents because when they were at work, they left the children in the care of their 18-year old son, whom Mother believed smoked marijuana. Another maternal relative reported that the grandparents were undocumented and working illegally, using fraudulent papers, and that they had paid to have Father smuggled back into the country following his deportation.

3

children were said to be doing well and the caseworker expressed no concerns about their placement.[5]

On May 7, 2013, the matter was transferred to Los Angeles County, where Mother was in a residential drug treatment program. Days prior to the transfer, on May 2, 2013, the girls were removed by DCFS from the paternal grandparents' home and placed with the maternal great-aunt, Renee H. Renee stated in a subsequent letter to the court that Father appeared to be living with the girls at the grandparents' home, as Isabelle had said Father slept with them, picked them up from school, and sat with them to watch movies. Renee also reported that the paternal grandmother had been dismissive about Father's sexual molestation of the 13-year old girl, purportedly saying, "'it's just the culture.'"

Renee did not desire to adopt the children. At the review hearing on October 8, 2013, DCFS was instructed to begin efforts to find a prospective adoptive home. The court specifically instructed DCFS to determine whether friends of Mother's family, the F.'s, living in Utah and recommended for placement by Mother's family, were willing to adopt and if so, to initiate an ICPC (Interstate Compact on the Placement of Children) report for the F.'s. Mother and Father were both present in court at the October hearing.[6] On October 24, the F.'s travelled to California, met with the caseworker and expressed their desire to adopt

---

[5]  By April 2013, Father had made no attempt to comply with the case plan or keep in contact with the caseworker. His reunification services were terminated at the April 18, 2013 review hearing. In September 2013, Father met with the caseworker for the first time and asked if he could participate in treatment and other reunification services, and if visitation could be arranged. Father stated he was planning to become involved in the proceeding and fulfill reunification requirements once he got a job. In November 2013, the caseworker received information that Father had enrolled in a parenting program and completed one session.

[6]  In November 2013, Mother told the caseworker that she agreed to the plan of moving the children to Utah for adoption by the F.'s, should she be unable to reunify. The caseworker reported being unable to contact Father to ascertain his preference.

4

the girls. On January 29, 2014, DCFS filed an application seeking placement of the children with the F.'s, reporting that the ICPC report and home study had been completed, and that the F.'s had recently enjoyed an extended visit with the children and confirmed their desire to adopt. The hearing on the application was scheduled for February 21, the same day as the 18-month review hearing.

On February 21, 2014, the paternal grandparents filed a petition for modification under section 388, seeking return of the girls to their custody and stating they were willing to adopt. To support the petition, Virginia, Emilio, a paternal aunt, and two paternal uncles wrote letters stating they loved the girls and describing how the grandparents had cared for them during the period the girls were living with them. The letters said nothing about the concerns that had led to the children's removal from the grandparents' home. Father did not join in the petition. By order dated February 25, the court summarily denied the petition, stating that the best interests of the minors would not be promoted by the proposed change.

In the meantime, the custody hearing took place on February 21, 2014. Both parents were present, as were the paternal grandparents. The court stated that DCFS was in favor of placing the children with the F.'s in Utah and asked for comment. Counsel for Father stated Father wanted greater visitation, but did not object to the proposed placement or comment on the grandparents' section 388 petition. The attorneys for Mother and the children joined in DCFS's request, and informed the court the F.'s would be arriving the following Sunday to take the children home with them. The court ordered the children to be placed with the F.'s and continued the 18-month review hearing. Father appealed.

## DISCUSSION

A. *Forfeiture and Standing*

Preliminarily, we point out that a party may not generally assert theories on appeal that were not raised in the trial court. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.) "'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings. [Citations.]'" (*Ibid*., quoting *In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222; see *In re Christopher B*. (1996) 43 Cal.App.4th 551, 558 ["In dependency litigation, nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court; otherwise those arguments have been waived and may not be raised for the first time on appeal."]; *In re Kevin S*. (1996) 41 Cal.App.4th 882, 885-886 [mother waived right to assert error on appeal as to court order setting section 366.26 hearing by not properly raising issue in lower court]; *In re Daniel D*. (1994) 24 Cal.App.4th 1823, 1831 [because mother did not seek placement with grandmother in juvenile court, she waived right on appeal to contend child should have been placed with grandmother].) The waiver rule "serves vital policy considerations of promoting finality and reasonable expedition" in the Legislature's "carefully balanced [dependency] scheme," and preventing a parent's "late-stage 'sabotage of the process'" through collateral attacks on otherwise final orders. (*In re Jesse W*. (2001) 93 Cal.App.4th 349, 355.) Father was present at both the October 2013 hearing when the placement with the F.'s was first proposed and the February 2014 hearing when the court advised the parties and their counsel that the children were about to be transferred to Utah. He did not object. By failing to object to the

6

placement of the children with the F.'s, he forfeited his right to raise this issue on appeal.

We also observe that at least two courts have held that once reunification services are terminated, as Father's had been months prior to February 2014, a parent lacks standing to appeal a juvenile court's denial of a relative's request for placement, and only the relatives who sought placement have the right to appeal. (*In re Jayden M*. (2014) 228 Cal.App.4th 1452, 1459-1460; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1035.) Father appears to believe that any standing deficiency would have been obviated by his joinder in the grandparents' section 388 petition. But the Supreme Court has said that "'the mere fact a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not alone constitute a sufficient reason to establish standing to challenge an adverse ruling on it.'" (*In re K.C*. (2011) 52 Cal.4th 231, 239, quoting *In re Carissa G*. (1999) 76 Cal.App.4th 731, 736.) Rather than dismiss the appeal for lack of standing, however, we resolve it on other grounds.


B. *Counsel's Inadequacy Is Not Shown on the Record*

Father seeks to avoid the forfeiture bar by contending on appeal that he received ineffective assistance of counsel when his attorney failed to join in the grandparents' section 388 petition and failed to object at the February 2014 hearing to the transfer of the children to Utah. We cannot reverse the juvenile court's custody order because counsel's ineffectiveness is not established on the record before us.

"[T]he proper way to raise a claim of ineffective assistance of counsel is by writ of habeas corpus, not appeal." (*In re Dennis H*. (2001) 88 Cal.App.4th 94, 98, fn. 1.) "[W]rit review of claims of ineffective assistance of counsel is the preferred review procedure" because "[t]he establishment of ineffective assistance of counsel

7

most commonly requires a presentation which goes beyond the record of the trial." "Action taken or not taken by counsel at a trial is typically motivated by considerations not reflected in the record." (*In re Arturo A*. (1992) 8 Cal.App.4th 229, 243.) "Evidence of the reasons for counsel's tactics" should be presented by "declarations or other evidence filed with [a] writ petition." (*Ibid*.) Habeas proceedings provide an opportunity for trial counsel to "'fully describe his or her reasons for acting or failing to act in the manner complained of.'" (*In re Paul W*. (2007) 151 Cal.App.4th 37, 55, quoting *People v. Pope* (1979) 23 Cal.3d 412, 426.) An ineffective assistance of counsel claim can be reviewed on direct appeal only where "'there simply could be no satisfactory explanation' for trial counsel's action or inaction," and "'"the omissions cannot be explained on the basis of any knowledgeable choice of tactics."'" (*In re Dennis H*., *supra*, at pp. 98-99, fn. 1.) "We cannot assume that the decision was the result of negligence, when it could well have been based upon some practical or tactical decision governed by client guidance." (*In re Arturo A*., 8 Cal.App.4th at p. 243 [observing that any omission on counsel's part was likely due to "lack of authority from the client"].) In short, it is only where "the incompetency of counsel [is] so gross as to jump out of the record and require no supplemental explanation" that the issue may be reviewed on appeal. (*Ibid*.)

Father claims there could have been no practical or tactical reason for his lawyer's failure to join in the grandparents' section 388 petition or object to the placement with the F.'s. We disagree. Father may have given counsel reason to believe that, like Mother, he had no objection to the children's placement with family friends pending resolution of the proceedings. Alternatively, counsel may have concluded that the children's removal from the grandparents' custody ten months earlier left little chance of success, particularly where both the children's counsel and Mother joined DCFS in recommending that the children be placed

with the F.'s.  Accordingly, we cannot say that counsel's failure to join in the petition constituted ineffective assistance as a matter of law.


C.  *Prejudice Is Not Shown on the Record*

To establish ineffective assistance of counsel in a dependency proceedings, a parent "has the burden of proving both that his [or] her attorney's representation was deficient and that this deficiency resulted in prejudice." (*In re Dennis H.*, *supra,* 88 Cal.App.4th at p. 98.)  Father claims that had he joined in the grandparents' section 388 petition, his counsel could have persuaded the court that the removal of the children from the grandparents' custody ten months earlier was unwarranted.  But the section 388 petition said nothing about the removal; it stated that the grandparents were prepared to offer the children a stable home.  Accordingly, there is no basis to believe that Father's joinder in the petition would have led to a different result.

## DISPOSITION

The court's February 21, 2004 order is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.