Filed 12/18/15  In re Z.A. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Z.A., et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.C., et al.,<br><br>    Defendants and Appellants. | A144360<br><br>(Alameda County<br>Super. Ct. Nos. HJ05000754,<br>HJ05000755, OJ14023352 &<br>OJ14023353) |

The four children of N.C. (Mother) and J.C. (Father) were detained after the oldest child, Z.A., Father's 13-year-old stepdaughter, reported he had repeatedly molested her over the prior two years.  Father denied the allegations, and Mother did not believe them, based on Z.A.'s emotional instability and past false reports of abuse.  After a contested jurisdictional hearing, the juvenile court found Z.A.'s testimony credible and precluded Father from living with the children, at least for the duration of the reunification period.  The parents both appeal, contending, among other issues, the juvenile court's findings were not supported by substantial evidence.  We affirm because even though there is reason to question Z.A.'s credibility, we must defer to the juvenile court on credibility determinations.

# I. BACKGROUND

In August 2014, the Alameda County Social Services Agency (Agency) filed dependency petitions in connection with Mother's four children, Z.A., a 13-year-old girl, her nine- and five-year-old half sisters, and a seven-year-old half brother. The petitions alleged Z.A. had been sexually molested by Father, her stepfather, who lived in their home, and had been molested in the past by her half brother, C.A., who no longer lived with them. At the time of the filing, Z.A. was institutionalized for treatment of emotional distress. (Welf. & Inst. Code,[1] § 300, subds. (c), (d).) Z.A.'s half siblings, the biological children of Father, were alleged to be at risk of abuse on the basis of his abuse of Z.A. (§ 300, subd. (j).) According to the petitions, Father denied the allegations, and Mother did not believe them because Z.A., who has been diagnosed with bipolar disorder, had a history of making false allegations of emotional, physical, and sexual abuse.

Z.A. told an Agency social worker that, beginning when she was "about 11 or 12," on many occasions Father had touched her breasts over and sometimes under her clothing and had touched her vagina over her clothing. Although her siblings were at home during these assaults, they had not witnessed the molestation. Z.A. did not believe the other children were at risk or that Father had molested them. Z.A. also said that when she was younger she had been molested by C.A.

The children were initially detained, but the three younger children were returned to Mother's care at the end of August, on the condition Father and C.A. stay away from the family home. Z.A. remained in foster care, unwilling to return home.

Z.A. was interviewed at a child abuse center shortly after her detention. Throughout the interview, Z.A. was calm and matter of fact in discussing her experiences. Initially, her description of Father's molestation was consistent with the account she gave to the Agency. The repeated acts of molestation, she said, occurred in the living room, hall, and kitchen of the family home, as well as in bedrooms. The touching of her breasts occurred "many" times, although sometimes Father would cease

---

[1] All statutory references are to the Welfare and Institutions Code.

2

for "weeks." Later in the interview, Z.A. described more extensive abuse, saying Father had sucked on her breasts, put his penis between her breasts and tried to put it in her mouth, forced her to rub his penis through his clothes, and forced her to kiss him. Z.A. said Father told her that if she ever said anything to anyone about the abuse, the Agency would take away her siblings.

The first person Z.A. told about the abuse was her boyfriend, soon after her parents ordered her to stop seeing him. Later, she told her therapist. Z.A. said she had never told her mother about the abuse or written about it in her diary.

In similar interviews conducted with the three younger children, they each said they had never been molested by Father and were unaware of any abuse by him of Z.A.

At the contested jurisdictional hearing, the Agency submitted a CD recording of Z.A.'s interview at the child abuse center. Neither Mother nor Father objected to its admission. Mother submitted CD recordings of the center's interviews with the other children.

Mother is employed as a social worker for Alameda County. At the hearing, she testified that Z.A. was diagnosed with attention deficit hyperactivity disorder (ADHD) in the fifth grade, in 2010, and with a mood disorder in the seventh grade, which was later determined to be bipolar disorder. Z.A. had been in therapy for the past four years and was taking psychotropic medication. Mother explained that Father came into Z.A.'s life when she was a toddler, and he was "very much" involved in her parenting. When Z.A. said she felt threatened by the presence of C.A. in their home and suggested Father quit his job to supervise C.A., Father did so.

Z.A.'s allegation of molestation arose after a family confrontation over her boyfriend. Z.A.'s parents first learned of the boyfriend in March or April 2014. Although they did not forbid the relationship, they placed strict limits on Z.A.'s activities with him. Toward the end of July, Mother discovered texts between Z.A. and the boyfriend indicating they were sexually active, and she punished Z.A., causing Z.A. to become very upset. Soon after, Z.A. told her therapist about Father's molestation.

3

Mother testified she had "no doubt" Z.A.'s allegations of abuse were false. As Mother explained, she found Z.A.'s interview tape unconvincing because Z.A. is ordinarily very emotional, but she was calm and comfortable during the interview. Mother had never observed conduct on Father's part suggesting improper behavior toward Z.A., and Z.A. had never reported to Mother that Father was sexually inappropriate with her. Nor had any of Z.A.'s therapists ever reported to Mother that Z.A. showed symptoms of sexual abuse.[2] Z.A. had been in her current therapy for over two years, had a good relationship with her therapist, and had discussed many sensitive topics with her. If molestation were occurring throughout the period of therapy, Mother believed, Z.A. would have told the therapist about it earlier. Further, Z.A. had made prior false allegations of abuse by Father and her brother.[3] Mother also noted the allegations arose very soon after Z.A. had been punished in connection with her relationship with her boyfriend and suggested Z.A. might have invented the allegations of abuse to escape the house and the restrictions on her behavior imposed by her family.

The social worker in charge of the investigation testified that she found Z.A.'s allegations in the interview to be "fairly credible," while conceding there was no evidence independent of Z.A.'s statements to support the claims. She explained the "biggest reason" for her recommendation Father be excluded from the family home was Mother's unwavering disbelief of Z.A.'s allegations. As the social worker reasoned, "that would affect her ability to protect any child if you are totally aligned with somebody and there is not even the possibility that they molested another child." For

[2] One of the younger children reported during her interview that Father "appears to want hugs and affection from [Z.A.] that she didn't want to give." Mother explained that Z.A. told her therapist in May that she felt unloved by Father, and he was advised by the therapist to show more affection for Z.A. After discussions with Mother, it was decided Father would try to hug Z.A. more often.

[3] The Agency had investigated the family previously when Z.A., at age nine, reported to a substitute teacher that Father had used excessive force in disciplining her. Z.A. later admitted having invented the story. Mother said Z.A. had also told friends at school about an assault by C.A. that was reported on social media as "rape." That story was found to be false after a police and Agency investigation.

Father to return home, the social worker said, Mother would need to develop an awareness of the symptoms of molestation and acknowledge the possibility of its occurrence.

Following extensive argument, the juvenile court found the children to be dependents of the court and largely adopted the recommendations of the Agency, noting "certain decisions have been difficult and required a close look." The court found "the level of detail" in Z.A.'s interview to be "persuasive and believable" and accepted her account as true. While the court recognized it was not required by law to find the three younger siblings at risk solely because it accepted the truth of Z.A.'s allegations, it nonetheless concluded that Mother had offered a "lack of protection." The court directed Z.A. to be continued in foster care, while granting reunification services to Mother. Father was denied custody of the younger children, but the court expressly noted the possibility he would later be permitted to return to the family home.

## II.  DISCUSSION

Both Mother and Father appeal the juvenile court's orders.

### A.  *Admission of Z.A.'s Recorded Testimony*

As noted above, the Agency submitted a CD recording of Z.A.'s interview with an official at a child abuse center. Neither parent objected to the admission of this evidence. They now contend the failure to object represented prejudicial ineffective assistance of counsel.[4]

The Agency contends, and we agree, this issue cannot be raised on direct appeal. A claim of ineffective assistance cannot succeed if the cited omission or conduct was the result of a rational tactical decision (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 255), and a claimant must " ' "affirmatively show" ' " that the conduct " ' "cannot be explained on the basis of any knowledgeable choice of tactics" ' " (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98–99 (*Dennis H.*)). For that reason, a claim of ineffective assistance

---

[4] Mother's brief makes the argument for ineffective assistance. Father has joined in Mother's arguments.

is ordinarily raised by way of a petition for habeas corpus in the juvenile court, rather than on direct appeal. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) Such a claim can be raised on appeal only if there is no "satisfactory explanation" for trial counsel's action or failure to act. (*In re N.M.* (2008) 161 Cal.App.4th 253, 270; *Dennis H.*, at p. 98, fn. 1.)

Several potentially sound bases justify trial counsel's decision to allow, without objection, Z.A.'s recorded interview into evidence. The obvious alternative to presenting her story through the interview recording was live testimony. Notwithstanding the difficulties created by Z.A.'s allegations, it is likely her parents had no desire to put their emotionally troubled daughter through the trauma of courtroom testimony and cross-examination. Allowing the interview spared her that inherently upsetting experience.

Yet even if the Agency would not have called Z.A. to testify, there was a possible tactical reason for allowing admission of the interview. Because Z.A.'s initial description of the molestation was contained in a detention report that was already in the record, excluding the interview would not have eliminated evidence of Z.A.'s allegations. The story told by Z.A. to the Agency social worker was consistent, plausible, and facially credible. As Mother noted in her testimony, however, there were reasons for finding Z.A.'s statements in the child abuse center interview not credible. Z.A.'s unemotional affect suggested to Mother that Z.A. had not actually experienced the events she described. Further, Z.A.'s account of the molestation became more lurid as she was questioned further by the interviewer, going well beyond the touching she initially described to the Agency. Counsel may have concluded that, in comparison with the description of events in the detention report, the interview could more readily be attacked as not credible.

Mother responds that trial counsel faced the choice of excluding evidence of the abuse or permitting the CD to be admitted in the hope it could be discredited and argues the former course was unquestionably preferable. That is not necessarily the choice facing trial counsel. In the absence of some evidence Z.A. was unavailable to testify, we assume the choice was between Z.A. by way of a recording or Z.A. on the stand. Yet

even if that were not the case, counsel could have concluded a description on the page was less susceptible to attack than the story told by Z.A. in the recording. Because there is a satisfactory explanation for counsels' failure to object to admission of the interview, we cannot consider the merits of the parents' ineffective assistance of counsel argument on direct appeal.

## B. *The Juvenile Court's Jurisdictional Findings*

### 1. Mother's Challenges

As to Z.A., the court found insufficient evidence to support the Agency's allegation of a threat of harm under section 300, subdivision (c), but it sustained the petition on the basis of the allegations under subdivisions (d) and (g). Mother contends the juvenile court erred in finding true certain of the jurisdictional allegations, although she does not dispute the sufficiency of the evidence supporting the court's finding of molestation.

We affirm jurisdictional findings if they are supported by substantial evidence. (*In re James R.* (2009) 176 Cal.App.4th 129, 134–135.) " ' "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

Initially, we note that we are not required to consider any of these arguments because Mother has not challenged *all* of the juvenile court's jurisdictional findings regarding Z.A. As we explained in *In re I.A.* (2011) 201 Cal.App.4th 1484, "It is commonly said that the juvenile court takes jurisdiction over children, not parents. [Citations.] . . . [¶] As a result of this focus on the child, it is necessary only for the court

7

to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] . . . For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent." ' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*Id.* at pp. 1491–1492; see similarly *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 (*M.W*).) Because Mother does not challenge the evidentiary support for the jurisdictional finding that Father molested Z.A., which was alleged in paragraph D-1 of the petition, her challenges to the evidentiary support for the other jurisdictional allegations need not be addressed.

Nonetheless, we have the discretion to consider one or all of those challenges "when the finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction." ' " (*M.W., supra,* 238 Cal.App.4th at p. 1452.) Because, as Mother points out, allegation D-4 has implications for the dispositional order, we exercise our discretion to address the court's finding that the allegation is true. We do not address Mother's challenges to allegations D-3 and G-1.[5]

---

[5] The allegation in paragraph D-3 concerned Z.A.'s molestation by C.A., who no longer lived in the family home. The allegation in paragraph G-1 was directed at Z.A.'s father, whose whereabouts were unknown. Neither allegation influenced, or is likely to influence, rulings with respect to Mother and Father.

Paragraph D-4 is alleged under section 300, subdivision (d), which provides for jurisdiction when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, . . . or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." The paragraph alleges "[t]he mother is unable/unwilling to protect the minor . . . from further incidents of sexual molest by the stepfather . . . as the mother does not believe that the minor has been sexually molested . . . ." Mother testified that she did not believe Z.A.'s claims, leading the Agency's social worker to express concern that Mother would not take action to protect Z.A. in the future if Father were returned to the home and resumed molestation.[6]

The social worker's concerns were not without substance. Given Mother's shaken confidence in her daughter's veracity and Z.A.'s continuing mental illness, a risk exists that, if Father were returned to the home and began to molest Z.A. again, Mother would once again reject the allegations. There is a further risk Mother will not take all possible steps to prevent a recurrence of abuse, given her disbelief in the present allegations. On this ground, we find the allegations to be supported by substantial evidence.

Mother analogizes these circumstances to those in *In re Jasmine G.* (2000) 82 Cal.App.4th 282 (*Jasmine G.*), but that case is readily distinguished. The 15-year-old minor in *Jasmine G.* was detained after her parents repeatedly used switches and a belt to punish her. They stipulated to jurisdiction. (*Id.* at p. 285.) On appeal, the parents challenged the juvenile court's decision to remove the minor from the home under section 361, subdivision (c), which requires clear and convincing evidence of a serious danger to the minor. At the dispositional hearing, both parents testified they had changed their attitude toward corporal punishment and expressed remorse for their actions. (*Jasmine G.*, at pp. 285–286.) The juvenile court nonetheless removed the minor on vague judgments by the social worker that the parents did not have a sufficiently

---

[6] We note there was no allegation Mother failed to act in the face of Z.A.'s *current* claims of abuse, presumably because there was no evidence suggesting Mother should have known about the molestation.

9

enlightened parenting style.  The appellate court found insufficient evidence to support the finding of danger and reversed the decision to remove.  (*Id.* at pp. 288–289.)

The social worker's concerns here were specific and, as discussed above, rooted in the events leading to Z.A.'s detention.  They did not amount to simple disapproval of Mother's method of parenting, as was the case in *Jasmine G.*  Further, the parents in *Jasmine G.* acknowledged the conduct leading to the minor's detention and agreed to change their approach to corporal punishment.  In contrast, Father denied the abuse and Mother chose to disbelieve it.  This very different response to the Agency's allegations justified the juvenile court's assertion of jurisdiction.

### 2.  Father's Challenge

Father challenges the evidentiary support for the only jurisdictional finding relating to the three younger children, the court's finding under section 300, subdivision (j).  Subdivision (j) grants jurisdiction when "[t]he child's sibling has been abused or neglected, . . . and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."  It directs the court to "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."  (*Ibid.*)  Father contends there was insufficient evidence to support a finding he posed a threat to the three younger children.

In general, "[c]ases overwhelmingly hold that sexual abuse of one child may constitute substantial evidence of a risk to another child in the household—even to a sibling of a different sex or age or to a half sibling."  (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 968 [citing cases].)  "[A]berrant sexual behavior directed at one child in the household places other children in the household at risk."  (*Id.* at p. 970.)

In the leading case of *I.J.*, the father was found to have engaged in prolonged, severe molestation of his oldest daughter, including forcible rape.  The court found jurisdiction over four younger siblings, one girl and three boys, on the basis of the

father's abuse of the oldest. On appeal, the father challenged the assertion of jurisdiction over the boys, since there was no evidence they had witnessed the molestation or were themselves victims. (*I.J.*, *supra*, 56 Cal.4th at p. 771.) In discussing the issue, the court observed, " 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. [Citation.] [¶] . . . [¶] . . . The broad language of [section 300,] subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' " (*Id.* at pp. 773–774.) *I.J.* concluded the assertion of jurisdiction over all children was justified on the basis of the serious nature of the abuse, its continuance over an extended period of time, and the fact it occurred while the other children were in the home, raising the possibility of discovery. (*Id.* at p. 778.) While the court recognized the risk of abuse to the boys was less than the risk to the daughter, it concluded " 'the danger of sexual abuse to the male sibling is nonetheless still substantial.' " (*Id.* at p. 780.)

Here, Father was found to have sexually molested his stepdaughter repeatedly over the course of more than 18 months. This alone provides substantial evidence to support a finding that the remaining children in the home were at sufficient risk of abuse, justifying the assertion of jurisdiction under section 300, subdivision (j). (*Los Angeles County Dept. of Children & Family Services v. Superior Court, supra*, 215 Cal.App.4th at p. 968.) While the abuse recounted by Z.A. could be considered less severe than that found in *I.J.*, since it did not involve genital penetration, it was nonetheless forcible and highly sexualized and was repeated many times over a period of well over a year. Further, the acts all occurred in the family home, in circumstances in which Father and Z.A. could have been seen or interrupted. The differences between this situation and that in *I.J.* are immaterial and do not justify a different result.

Father's argument relies on a selective recitation of the evidence of molestation, including the suggestion Z.A.'s recorded statement should not be credited in its entirety.[7] While Father presented reasons for disbelieving some or all of Z.A.'s statement, the juvenile court found her interview credible. Under the substantial evidence standard of review, we must accept Z.A.'s statement. We therefore conclude the evidence of molestation is not materially distinguishable from the evidence found sufficient to support jurisdiction over both male and female younger siblings in *I.J.*

## C. *Father's Challenge to the Dispositional Order*

Father also contends the juvenile court erred in ordering the younger siblings removed from Father's custody under section 361, subdivision (c)(1) and (4).[8]

Under section 361, subdivision (c)(1), a dependent child cannot be taken from the physical custody of his or her parents unless the juvenile court finds clear and convincing evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor . . . ." The subdivision expressly directs the juvenile court to "consider, as a reasonable means to protect the minor, each of the following: [¶] (A) The option of removing an offending parent or guardian from the home. [¶] (B) Allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." Subdivision (c)(4) permits removal when there is

---

[7] As an example, Father characterizes the abuse reported by Z.A. as "somewhat innocuous" compared to that reported in other cases. Putting aside the bizarre characterization of any type of molestation as "innocuous," the implication Father's touching was mild in degree ignores the serious abuse reported by Z.A. in the latter part of her interview at the child abuse center.

[8] The Agency contends Father forfeited his right to appeal the dispositional order because he agreed to move out of the house. As best we can tell from the record, however, Father only agreed to move out for the interim period between the children's detention and the dispositional hearing. There is no indication he acceded to the juvenile court's disposition.

12

clear and convincing evidence "[t]he minor or a sibling of the minor has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent . . . and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent . . . ."

" 'The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home. [Citations.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' " (*In re J.S.* (2014) 228 Cal.App.4th 1483, 1492 (*J.S.*).)

" 'We review the court's dispositional findings for substantial evidence. [Citations.]' [Citation.] . . . '[T]he "clear and convincing" standard is for the edification and guidance of the juvenile court. It is not a standard for appellate review. [Citation.] " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]" [Citation.] "Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " ' " (*J.S., supra,* 228 Cal.App.4th at pp. 1492–1493.)

Initially, it is not clear that section 361, subdivision (c) applies in these circumstances. As noted above, the statute requires the court to consider, as an alternative to removal of the minor from the family home, "removing an offending parent or guardian from the home." (§ 361, subd. (c)(1)(A).) The availability of this alternative implies that the requirements of subdivision (c) are applicable only when a child is removed from the family home, rather than merely from the custody of one of two parents living in the home. Removal of the offending parent, the acceptable alternative suggested in subdivision (c), is precisely the juvenile court's approach here.

13

We need not resolve this issue, however, because substantial evidence supports the removal of the three younger children from Father's custody under section 361, subdivision (c). Given Father's molestation of Z.A., which, as discussed above, provides substantial evidence to support the finding of a risk of molestation of the other three children, under subdivision (c)(4) it was only necessary for the juvenile court to find clear and convincing evidence that "there are no reasonable means by which the minor can be protected from . . . a substantial risk of sexual abuse without removing the minor from his or her parent . . . ." It is difficult to imagine how the three younger children could be protected from Father if he were allowed to remain in the home. Even if allowing Mother to stay home at all times when Father is present were deemed sufficient to protect the three children, that is not an economically feasible solution here because Mother is the primary breadwinner in the family. Father suggests the children are often in school and a social worker will be visiting on a regular basis, but neither of these is sufficient to protect against abuse when the children are home and a social worker is not present. Nor is it sufficient to suggest, as Father does, that the children are capable of reporting should abuse occur. Once a child has been molested, the emotional and physical damage is done.

Father analogizes these circumstances to those in *In re Hailey T.* (2012) 212 Cal.App.4th 139, but that case was decided under section 361, subdivision (c)(1), rather than subdivision (c)(4). The court's focus was therefore largely on the lack of evidence of a risk of harm to the nonabused minor. Further, the evidence linking the parents to the injury inflicted on the abused minor in *Hailey T.* was equivocal, at best. (*Id.* at pp. 147–148.) In contrast, Z.A.'s account of Father's molestation was unequivocal. Given the very different circumstances, we find *Hailey T.* unpersuasive here.

### III. DISPOSITION

The orders of the juvenile court are affirmed.

                                    _____
                                    Margulies, J.

We concur:


_____
Humes, P.J.


_____
Dondero, J.