Filed 9/10/15  In re K.M. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.M., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>H.M.,<br><br>    Defendant and Respondent. | A142660<br><br>(Contra Costa County<br>Super. Ct. No. J1300137) |

**INTRODUCTION**

H.M., the father of K.M., (Father) appeals from the court's jurisdictional and dispositional orders and the order terminating reunification services, asserting no substantial evidence supports the court's finding he sexually abused K.M.  Father also claims his trial counsel was ineffective because he failed to call K.M. as a witness.  We find no merit in his contentions, and affirm.

**BACKGROUND**

We set forth only those facts relevant to the issues raised on appeal.  In January, 2013, Contra Costa County Children and Family Services (Department) detained then-seven-year-old K.M. and placed her in foster care after she reported to school personnel

1

Father hit her on the leg with a belt. Father admitted hitting K.M. with a belt, explaining the " 'problem in this country [is y]ou are not allowed to hit your kid.' "

Father pleaded no contest to allegations in the amended petition of serious physical harm, failure to protect K.M. from ongoing domestic violence with K.M.'s mother, and serious emotional damage due to Father's physical abuse. Mother pleaded no contest to allegations she failed to protect K.M. from abuse and that K.M. suffered serious emotional damage. The court continued K.M.'s placement in foster care.

In the Department's disposition report, the social worker reported K.M. had exhibited some concerning behavior in foster care. In one incident, the foster mother reported K.M. woke her up in the middle of the night and told her the family dog had bitten her after she took the dog in the bathroom with her. The foster mother noted the dog's genitals were wet and the bathroom had a strong odor "which she associated with anal scent gland expression." The foster mother also reported K.M. has offered to get a belt or tree limb, and said she would understand if the foster mother hit her as punishment. K.M. had begun weekly visits with her mother, but there was a " 'no contact' " order regarding Father.

The court ordered reunification services for both parents.

In December 2013, the Department filed a subsequent petition alleging Father sexually abused K.M. and mother failed to protect her. K.M.'s therapist reported K.M. brought some pictures she had drawn to therapy which raised concerns because one featured a "prominent drawing of [a] dog's penis." A social worker made an unannounced visit to K.M.'s school. During that visit, K.M. told the social worker that she might be able to see her parents in the future, but she was scared to see Father because he touched her private parts. She told the social worker Father "would tell her to pull down her pants and would touch her on her privates" for 20 minutes. K.M. reported she did not like it because she often got a rash afterwards. She denied that her mother touched her.

K.M. was interviewed at the Children's Interview Center. She told the interviewer she did not feel safe with Father because he hit her with a belt. She also said Father

2

started touching her "private parts" with his finger, beginning when she was four years old. When he touched her, his fingers "would move around and make her feel weird." Sometimes Father's nails would scrape her vaginal area and it hurt " 'really bad.' " If she wiggled, Father "would hold her legs straight and in place." Sometimes he told her "to open her legs a little bit," which she demonstrated while lying on the couch in the interview room. Father told K.M. "he did not want anyone to know or that he would 'hit me.' " She told her mother and grandmother about the touching. Her mother "did not do anything." K.M. also told her therapist "she was touched in her private areas by her father." She told her therapist "there were things that she did not want [to] say in the interview because she did not want to get her dad into trouble," and he had threatened to kill her parakeets.

The court held a contested jurisdiction hearing regarding the new allegations. Prior to the hearing, the court viewed the recorded interviews of K.M. at the Children's Interview Center, which were admitted into evidence.[1] The court ordered that both parties be given the opportunity to view the recordings, and ordered a transcript prepared.

At the hearing, K.M.'s foster mother testified K.M. told her both parents had touched her private parts. K.M. also told her she had yeast infections in the past. The foster mother contacted the social worker, who spoke with K.M. at her school.

Father denied that he ever touched K.M. in a sexual manner. Mother testified she never saw Father touch K.M.'s private parts, and that K.M. never told her about him touching her in a sexual manner. Mother, in turn, testified Father had never been in a room alone with K.M. Because K.M. had lied about telling her, Mother also found it hard to believe K.M.'s allegations about her Father touching her. Mother further testified K.M. had lied in the past about getting in trouble at school. She testified K.M. had never complained to her about vaginal pain or discharge, but acknowledged K.M. had complained "her private parts itched . . . [a]nd so we would . . . put the diaper rash cream on her." Following her testimony, the court asked Mother "I get the impression that

---

[1] The first interview took place on January 31, 2013. The second interview, regarding the sexual abuse allegations, took place on October 28, 2013.

3

you're mad at your daughter; is that true? Are you mad at your daughter?" Mother responded "No, I'm not mad at her."

Following the hearing, the court sustained the allegation of sexual abuse by Father.[2]

**DISPOSITION**

### *Substantial Evidence*

Father maintains no substantial evidence supports the court's finding he sexually abused K.M. "We review the dependency court's findings under the substantial evidence standard. We must affirm the court's findings unless, after reviewing the entire record and resolving all conflicts and drawing all reasonable inferences in favor of the order, we determine there is no substantial evidence to support them." (*In re J.C.* (2014) 233 Cal.App.4th 1, 5.)

Father first claims K.M.'s out-of-court statements were unreliable because they were uncorroborated, relying on *In re Cindy L.* (1997) 17 Cal.4th 15, 30 (*Cindy L.*). *Cindy L.* recognized a "child dependency" exception to the hearsay rule, but enumerated the following requirements: "(1) the court must find that the time, content and circumstances of the statement provide sufficient indicia of reliability; (2) a child must either be available for cross-examination or there must be evidence of child sexual abuse that corroborates the statement made by the child; and (3) other interested parties must have adequate notice of the public agency's intention to introduce the hearsay statement so as to contest it." (*Cindy L.*, *supra,* 17 Cal.4th at p. 29.) Thus, *Cindy L.* requires *either* corroboration *or* availability of the child for cross-examination. Father concedes K.M. was available for cross-examination, but Father's trial counsel made a decision not to call her as a witness.

In his reply brief, Father explains he does not contend "that corroboratory evidence was necessary for [K.M.'s] out-of-court statements to be admissible. [Citation.] What [defendant] contends is that the complete lack of corroboratory evidence, physical

---

[2] The amended petition also contained allegations that Mother failed to protect K.M. from abuse. The court held the Department had not met its burden in that regard.

4

or otherwise, coupled with the evidence of motive to fabricate and the clear evidence of susceptibility to suggestion and fabrication, goes to the issue of sufficiency."

As the court found, K.M.'s out-of-court statements contained details which made them both "self-corroborative" and credible. The court explained "[T]he bottom line for the court is that the child is still credible with respect to being molested. She was specific. She said that the father would touch her privates with two fingers and that his fingers would be moving, that it felt weird, that his nails would scrape against her, and it was [the] part that covers the inside and [his] sharp nails would hurt the inside, and 'if I tried to move, he would hold it in place and that he would open it, and he would say don't tell anybody.' And I think those details are so specific and they're so unusual that they corroborate her testimony that it happened . . . because it's not the kind of thing that I think a little girl can see or be told, and I think it's too consistent with the statements that she made to the foster mother, to the therapist, CIC interview. She has been consistent with regard to those things . . . ."

Father asserts K.M.'s conflicting statements, initially telling her foster mother that both Mother and Father touched her private parts, and later saying it was only Father, demonstrates her lack of credibility. Mother testified, however, that she had applied cream to K.M.'s vaginal area. K.M.'s initial statements to her foster mother may have included this touching by Mother, while her later statements in her interview appeared more focused on a sexual kind of touching. Regardless of certain inconsistencies, we resolve all conflicts and drawing all reasonable inferences in favor of the court's finding. Substantial evidence supports the trial court's order.

### Ineffective Assistance of Counsel

Father claims his trial counsel was ineffective in failing to call K.M. as a witness at the hearing.

"To establish ineffective assistance of counsel in dependency proceedings, a parent 'must demonstrate both that: (1) his appointed counsel failed to act in a manner expected of reasonably competent attorneys acting as diligent advocates; and that (2) this failure made a determinative difference in the outcome, rendering the proceedings

5

fundamentally unfair in that it is reasonably probable that but for such failure, a determination more favorable for [the parent's] interests would have resulted.' [Citations.] In short, appellant has the burden of proving both that his attorney's representation was deficient and that this deficiency resulted in prejudice. [Citation.] [¶] To prove deficient representation, [a party] 'must "affirmatively show that the omissions of defense counsel involved a crucial issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." [Citation.]' [Citation.]" (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98–99.)

Father's trial counsel made an admitted tactical decision not to call seven-year-old K.M. as a witness, stating "I didn't ask for her to be here. I wouldn't want to put a child that age on the stand, in any event." Father has not demonstrated this was an unreasonable tactic, given the youth of K.M. and her demeanor and language in revealing the sexual abuse to others and in the interview. Even had Father's attorney called K.M. as a witness, Father only speculates that a determination more favorable to him would have resulted. Father's attorney could reasonably have concluded that putting K.M. on the stand would be detrimental to his position. Father has failed to demonstrate his counsel was ineffective.

## DISPOSITION

The order is affirmed.

6

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.

A142660, *In re K.M.*

7