Filed 10/6/23  In re F.K. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.K., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080747 |
| Plaintiff and Respondent, | (Super.Ct.No. J277043) |
| v. | OPINION |
| S.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

In 2017, minor F.K. was removed from his parents' custody. Subsequently, neither parent was able to reunify with him and he was placed in a group home under a permanent plan of legal guardianship. In 2021, the juvenile court terminated parental visitation after finding it to be detrimental. On January 27, 2023, minor's counsel informed the court that minor asked about visits with the parents. S.L. (mother) was not present, the court was unable to contact her by phone, and her attorney offered no comment in response to F.K.'s inquiry. With no further discussion on this issue, the court adopted the findings and orders set forth in the November 23, 2022 review report prepared by San Bernardino County Children and Family Services (CFS).

On appeal, mother contends (1) the juvenile court erred by failing to order, *sua sponte*, an investigation into minor's request for parental visitation before affirming the finding that it was detrimental, and (2) minor's counsel was ineffective because she misunderstood the law when she represented to F.K. that visitation could only resume if his parents petitioned the court and proved visitation to be in his best interests. We reject mother's contentions and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

The present appeal incorporates the records from prior appeals: case Nos. E071128, E074453, E076046, E076625, E076900, E076901, and E077980. (Cal. Rules of Court, rule 8.147(b)(1).) The procedural and factual background for the dependency action is detailed in the opinion of the Court of Appeal, First Appellate District (see *In re F.K.* (Sept. 20, 2019, A154789) [nonpub. opn.]) and in this court's prior opinions (see *In re S.K. et al.* (Oct. 20, 2020, E074453) [nonpub. opn.]; *In re A.M.*

2

(Jan. 19, 2022, E076625) [nonpub. opn.].)  On our own motion and to compile a coherent narrative, we take judicial notice of these prior nonpublished opinions.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a); Cal. Rules of Court, rule 8.1115(b)(1).)

A.  *Initiation of F.K.'s Dependency in Sonoma County.*

F.K. (born in 2010) is the oldest of mother's four children.[1]  (*In re A.M.*, *supra*, E076625.)  In February 2017, the Sonoma County Human Services Department (SCHSD) initiated dependency proceedings pursuant to Welfare and Institutions Code[2] section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling) and removed F.K. and S.K. (the siblings) from mother's care based on her failure to treat F.K. with lifesaving heart surgery and to provide S.K. with necessary dental and medical treatment.  (*In re S.K.*, *supra*, E074453.)  Three months later, mother gave birth to the sibling's half brother, A.M.  (*Ibid.*)  By October, SCHSD amended the petition to include A.M. and to allege under section 300, subdivision (d), that the siblings had been sexually abused and exposed to multiple pornographic films depicting child on child sexual encounters.  (*In re S.K.*, *supra*, E074453.)

The siblings confirmed their exposure to and participation in sexual acts.  (*In re S.K.*, *supra*, E074453.)  F.K. displayed inappropriate age-related behavior, including excessive masturbation, stating he wanted to see the "tooshies" (his name for

---

[1]  Mother has four children:  F.K. and S.K. with father C.K., and A.M. and M.M. with father M.M.  Neither father is a party to this appeal and, therefore, will be discussed only if necessary.

[2]  Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

vagina) of S.K. and other young girls, and he orally copulated and touched S.K.'s "tooshie." (*Ibid.*) S.K. told the social workers that F.K. had kissed, licked, and sucked on her "tooshie" multiple times. (*Ibid.*) F.K. again stated that he got the idea of putting his mouth on S.K.'s privates from movies he watched at mother's house, and he had seen a child "doing sex" to S.K. by "pushing the front privates together" during a visit to the Sundance film festival with his biological father. (*Ibid.*) Mother denied possessing pornography and exposing the children to any sexually explicit material. (*Ibid.*)

In June 2018, mother and M.M. (A.M.'s biological father) moved to San Bernardino County; F.K. was residing in a group home, which offered a residential treatment and educational program. (*In re S.K.*, *supra*, E074453.) Mother started a sex offender specific therapy but continued to deny that F.K. had been sexually abused by herself and others. The social worker expressed concern that mother "allowed her children to be sexually abused, allowed the abuse to continue through her denial, and ultimately participated in that abuse along with [C.K. (siblings' biological father) and M.M.], causing incredible harm and trauma which she now refuses to acknowledge and help heal." (*In re A.M.*, *supra*, E076625.) On December 19, 2018, the Sonoma County Juvenile Court terminated reunification services and set a section 366.26 hearing as to the siblings only. (*In re S.K.*, *supra*, E074453.)

*B. Transfer of Dependency Proceedings to San Bernardino County.*

In 2019, Sonoma County transferred the dependency of all three minors to San Bernardino County. (*In re A.M.*, *supra*, E076625.) Mother participated in visitation and attended individual therapy and sex offender specific counseling. Although CFS initially

4

set a goal of adoption, F.K. had experienced nine changes in placement. (*In re S.K.*, *supra*, E074453.) He struggled with behavioral and emotional dysregulation, had difficulty focusing and paying attention, would become oppositional when given directions, tended to initiate conflict with his peers and staff, required high staff support to manage his behavior, and continued to engage in power struggles seeking to control his environment. Although he could verbalize his feelings, he would become overwhelmed and act out in anger. (*Ibid.*) Since the transfer to San Bernardino County, F.K. had been referred to therapeutic services. (*Ibid.*) In October 2019, mother's fourth child, M.M. was born with hypoxia. (*In re A.M.*, *supra*, E076625.) CFS filed a petition under section 300, subdivisions (b), for medical neglect, and subdivision (j), for the risk of sexual abuse similar to the siblings. (*Ibid.*)

On November 5, 2019, mother requested increased and unmonitored visitation of the siblings and A.M., along with the reinstatement of her reunification services in order to transition them to her home. (*In re S.K., supra,* E074453.) She attended a sexual abuse program to address what had happened to her as a child, how it had influenced her as a mother, and to fully understand and prepare for the safe return of the siblings and A.M. (*Ibid.*) The social worker acknowledged mother's participation in counseling, parenting classes, and therapy, but reported that she "'has not made the beneficial changes necessary to protect her children.'" (*Ibid.*) Mother "'minimize[d] her involvement and lack of protective capacity,'" "'failed to take responsibility'" for her children's dental and medical neglect, and "minimize[d] the sexualized behaviors with the children." (*Ibid.*) The juvenile court denied mother's request based on insufficient

5

evidence of a substantial change and no prima facie showing the proposed change is in the children's best interests.  (*Ibid*.)

By November 12, 2019, CFS no longer recommended adoption given the siblings' behaviors.  (*In re S.K., supra,* E074453.)  Instead, it recommended a planned permanent living arrangement (PPLA) with a goal of adoption.  (*Ibid*.)  Mother still minimized the sexualized behaviors with the siblings and denied that she or any parent perpetrated sexual abuse upon them.  (*In re A.M.*, *supra*, E076625.)  The juvenile court adopted the recommended PPLA for the siblings and continued supervised monthly visitation. Mother appealed; we affirmed.  (*In re S.K., supra,* E074453.)

In 2020, mother continued to have monthly supervised visits with F.K. who was receiving wraparound services.  Her counseling progress report noted that she was engaged; however, she did not discuss allegations of sexual abuse and claimed the children must "have learned that in the foster care system."  (*In re A.M.*, *supra*, E076625.)  The wraparound providers denied mother's request to participate in F.K.'s meetings because they found her contact with him to be a trigger that affected his overall emotional well-being.  In October, the juvenile court terminated her reunification services and visitation as to A.M. and M.M.  In 2021, it terminated visitation with S.K. and her parental rights to A.M., M.M., and S.K.  (*In re A.M.*, *supra*, E076625.)

In its status review report, filed November 6, 2020, CFS recommended F.K. continue to receive permanent planning services with a permanent plan of legal guardianship.  He struggled with encopresis and enuresis during both night and day, displayed behaviors of hyperactivity and impulsivity, and was easily enraged.  Following

6

visits with mother, F.K.'s negative behaviors increased. The wraparound team continued to find her participation in child and family team meetings was not in his best interest because it affected his overall stability. The juvenile court set a section 366.26 hearing with a plan of legal guardianship with his caregiver.

According to the status review report filed April 27, 2021, F.K. was moved to Father's Heart Ranch Group Home for throwing a rock at his caregiver and threatening and attacking another child. Nonetheless, the foster mother remained part of his support system and F.K. hoped to return to the foster home after working on his behaviors. Following visits with mother, F.K.'s negative behaviors increased and he displayed emotional dysregulation. During the March visit, mother told him that he did not have to talk to others if he did not want to, but that he needed to be honest with her and talk to her. According to F.K.'s therapists, the visits hinder his emotional stability and interfere with his ability to process the trauma. Thus, CFS recommended the juvenile court find visitation with mother is detrimental to the child. A contested hearing on CFS's recommendation was set.

On October 6, 2021, CFS provided additional information (6.7 report) to the juvenile court, specifically noting that F.K. "verbalize[d] that he wants to continue to have visits with his mother." However, CFS remained concerned about the emotional disturbance the visits caused the child. The wraparound team reported that F.K. "displays resistance when discussing difficult topics during his individual sessions, [he] will gradually express himself then shuts down when he is tasked to identify and explore any [of] his triggers. Additionally, [he] is observed to become more anxious, irritable, and

7

disrespectful before and after visits with his mother." "After the visits, [F.K.] tends to have an increased amount of aggression toward others, in which at times becomes physical and creates a safety concern for himself and others." At their appearance on October 6, F.K.'s counsel requested temporary termination of mother's visitation pending the hearing to permanently terminate visits. Mother's counsel objected, arguing that "[i]t appears [the child] wants to see her." After finding a correlation between mother's visits and F.K.'s negative behaviors, the juvenile court granted the request but authorized CFS "to reinstate appropriate visits once we can stabilize the rest of the child's behaviors."

On November 22, 2021, CFS provided further additional information (6.7 report) to the court regarding F.K.'s progress since visitation with mother was suspended. CFS stated, "On 11/04/2021, it was reported that the child has made progress with his behaviors over the past month and half. [CFS] has factored this positive change in behaviors is attributed to the halting of visits with mother." It was further reported that after mother's visits with S.K. were terminated, mother arranged a "visit and drop off gifts" with S.K.'s foster mother. As a result of this contact, S.K.'s progress regressed and she "verbalized that she feels pressured to lie about her concurrent home." The social worker opined that mother impacts her "children in a negative aspect."

On December 2, 2021, CFS submitted several reports and attachments into evidence. Mother's counsel submitted the service logs from April 1 to 9, 2021, and October 19, 2021. Noting that F.K. wanted to see mother, counsel argued "even though there's a recommendation of finding visits detrimental[,] . . . based on the evaluations and [F.K.] being on psychotropic meds and stuff, I think [his] behavior, while they talk about

8

the behavior before and after visits with Mother, [his] behavior is such I don't think it is such that Mother's visits are the primary cause of the behavior problems. And so from that standpoint, we're asking the Court not to find a detriment finding regarding visitation." Mother was willing to participate in conjoint therapy and counsel opined that "visitation would be possibly helpful for [F.K.] if it is done in a therapeutic setting."

In reply, F.K.'s counsel argued the minor's behavior supports a finding of detriment. She asserted that mother is manipulative, "has no concern over the safety of her children or what is best for them[,]" and her "request for visitation is about her and what she wants." Counsel had spoken with Father's Heart Ranch and was informed that F.K.'s behavior has stabilized, he has continued contact with his prior caregiver with whom he resided "for quite some time until his behaviors deteriorated from contact with Mother." CFS concurred with minor's counsel's comments.

The juvenile court adopted the findings and orders as modified and listed in the October 6, 2021, 6.7 report, and found visitation with mother to be detrimental and not in the best interest of the child. It added, "[R]egardless of whatever the child says [he] want[s], [he doesn't] know what is good for [himself], and that is the case here." When F.K.'s counsel asked whether the court could authorize the mother to contact the minor via letter or through the social worker, the court replied, "Detriment is detriment is detriment. The answer is, 'no.' 'No.' 'No.'"

In the status review reports filed May 18 and November 10, 2022, CFS stated the permanent plan of legal guardianship continues to be appropriate for F.K. F.K. was diagnosed with Attention Deficit Hyperactivity Disorder predominantly hyperactive type

9

and Oppositional Defiant Disorder. His behaviors (easily angered and defiant) interfere with personal relationships, education goals, and social activities. "In therapy, [he] is guarded and unwilling to discuss his sexual abuse trauma that has taken place." He was residing at Father's Heart Ranch, his 10th placement, where he felt safe. Nonetheless, he continued "to struggle with appropriate boundaries, aggression toward others, anger outburst, and defiance." The facility continued to provide services to assist him with "identifying his triggers, teaching him de-escalation techniques and learning effective coping skills. Although he had no contact with mother, F.K. was having telephone visitations with his previous foster mother, whose home he would like to return to; however, he was not "ready for a lower level of care."

At the permanent plan review hearing on January 27, 2023, F.K.'s counsel stated, "I am submitting on the recommendation. I did speak with my client this morning. He did ask about visits with the parents. The Court previously made a detriment finding. I did tell him that the parents would have to file a motion to have the Court reconsider the detriment finding. I did let Parents' counsel know that, but at this point, we don't have any information to support a change without any information for the parents." When the juvenile court asked if anyone else had anything to say, mother's counsel replied, "No, your Honor." The court attempted to engage the minor in a discussion about his circumstances, but did not ask about his desire or interest in visiting his parents. The court continued to find visitation between minor and mother to be harmful, adopted the findings and orders listed in the November 23, 2022, status review report, and set another permanent plan review hearing for July 21, 2023.

## II. DISCUSSION

Mother raises two issues on appeal.  She faults the juvenile court for failing to order, *sua sponte*, an investigation into F.K.'s request for parental visitation prior to affirming its detriment finding.  Alternatively, she contends minor's counsel was ineffective because she misunderstood the law when she represented to F.K. that visitation could only resume if his mother petitioned the court to change its prior order and sustained her burden of proving that visitation was in his best interests.  CFS argues mother waived the claim of ineffective assistance of minor's counsel by failing to raise it below.  We do not decide whether mother knowingly, intelligently, and voluntarily waived any claim because, assuming without deciding that her arguments are preserved, they fail on the merits.

### A. *Resuming Parental Visitation.*

Mother faults the juvenile court for confirming its prior "order finding that parental visitation was detrimental without first ordering, *sua sponte*, a detailed report from [CFS] and the child's therapist on . . . F.K.'s wishes and attitudes towards parental contact."  She contends the court erred in failing to order an investigation into F.K.'s request for parental visitation.  Finding no error in the court's action, we reject mother's contention.

According to mother, the juvenile court "had before it new evidence that the child was asking about—and presumably wanting—contact with Mother and father."  However, this was not new evidence.  When CFS initially asked the court to determine that parental visitation was detrimental to F.K., it also informed the court that the child

11

had "verbalize[d] that he wants to continue to have visits with his mother."  In determining visitation with mother to be detrimental, the court acknowledged the child's wishes but found that he "[doesn't] know what is good for [himself]."

On January 27, 2023, F.K. reiterated his prior statement concerning his wish to visit mother.  However, the evidence provided by CFS shows that he remained resistant about discussing difficult topics, and visitation with mother exacerbated his negative behaviors.  There was no evidence that mother had undergone a change in her manipulative behavior, or her refusal to acknowledge her role in F.K.'s sexual abuse, to warrant an investigation into the benefits of resuming her visitation.  Nonetheless, she states that "a year on—without maternal contact—the child's behavior problems continued."  Since F.K.'s behaviors have existed from the inception of the dependency, exacerbated around the time of his visits with mother, it is pure speculation to say that his "acting out behaviors were because of NOT seeing Mother."

In short, nothing in the record before this court leads us to conclude the juvenile court erred in failing to order an investigation into F.K.'s request for parental visitation.  If the circumstances change or new evidence becomes available, section 388 provides mother the right to petition the lower court for modification of its prior order terminating parental visitation.

### B.  Ineffective Assistance of Counsel.

To establish ineffective assistance of counsel in dependency proceedings, mother must establish both that her attorney's representation was deficient and that this deficiency resulted in prejudice.  (*In re Dennis H*. (2001) 88 Cal.App.4th 94, 98.)  To

12

prove deficient representation, she must show that counsel's deficiency involved a crucial issue and cannot be explained based on any knowledgeable choice of tactics.  (*People v. Loza* (2012) 207 Cal.App.4th 332, 351.)  Where "counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions."  (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

Here, F.K.'s counsel's reason for failing to argue in favor of resuming parental visitation was stated on the record.  Counsel informed the court that F.K. had asked about visiting his parents, but counsel submitted on CFS's recommendation because "at this point, we don't have any information to support a change without any information for the parents."  In contrast, mother's counsel was silent.  However, he may have tactically decided not to object for the same reason.  We note that mother does not challenge on appeal the merits of maintaining the no parental visitation order but only the failure of the juvenile court to order, *sua sponte*, an investigation into F.K.'s request for parental visitation.  Based on this record, mother cannot establish that counsel was ineffective in failing to argue in favor of resuming parental visitation.

## III.  DISPOSITION

The juvenile court's findings and orders at the January 27, 2023 hearing are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.